# REPORTS

OF

## CASES ARGUED AND DETERMINED

AT THE

## JANUARY TERM, 1847.

---

### PINKARD v. INGERSOL, ET AL.

1. A deputy clerk is authorized to take and certify the acknowledgement of a deed, so as to warrant its registration.
2. The assent of a grantor to the provisions of a deed conveying property in trust for his benefit, is to be inferred from his acceptance of the deed at the time of its execution.
3. The assent of one *cestui que trust* will not validate a deed which expressly or by implication requires the assent of others.
4. Where parties having actual or colorable claims to property conveyed by two different deeds of trust meet, and enter into a special agreement with reference to the trust property, this agreement is to be considered as ascertaining their respective rights and will in equity, as between the parties, furnish the basis for settling their rights independent of the trust deeds.

Writ of error to the Court of Chancery for the fourteenth district.

THE case made by the bill is this: About the first of August, 1836, the complainant, Pinkard, sold to the defendant, Ingersol, and one Underwood, twenty-eight slaves, for which the purchasers executed their notes at one, two and three years' date. The notes were not paid at maturity, and on the one first due, Underwood was sued in Georgia, and all the amount collected except $2362.

2

On the 10th of August, 1839, Ingersol executed a deed of trust by which he conveyed certain tracts of land, several lots in Girard and thirty-three slaves, (including a portion of those purchased from Pinkard) to one Bailey, to secure the payment to the complainant of $4000 of the sum then due on the notes on the 1st January, 1840, and $8993 46, to be paid on the 1st January, 1841. At this time the note secondly due had been reduced to judgment, (as recited in the deed) in the State of Georgia. On the 30th of August of the same year, the complainant agreed with Ingersol to take back twelve of the slaves originally sold to him and Underwood at the price of $8,000, leaving some $12,000 remaining due besides interest.

Previously to the execution of this deed of trust, Ingersol on the 21st March, 1839, had executed another to one McDougald, conveying the same property as a security for certain notes described in the deed, all of which fell due on or previous to the 1st January, 1840. This deed provides, that Ingersol should retain possession of the property until the expiration of twelve months from the date, after which period the grantee was invested with the power to enter and sell. The period having expired, McDougald advertised the property for sale, and the complainant then filed his bill, alledging that the deed to McDougald was fraudulent, and the debts either simulated or paid by Ingersol. The prayer is, that a discovery may be had of the fraud, and that if any thing is really due, that the property may be sold under the direction of the court, and the amounts due to the complainant on the notes paid him out of the surplus. To give color to this prayer, there is an allegation in the bill that the deed of trust securing a less sum than the amount of the notes was not intended to release Ingersol from the payment of the balance, and it is stated a judgment was recovered in Alabama on one of the notes, on which an execution was returned, " no property."

The answer of Ingersol admits the purchase of the slaves, the giving of the notes and the execution of the deeds of trust set out in the bill, and insists that the one to McDougald is fair and *bona fide*, as well as that the debts therein mentioned are due as recited. He denies that any thing more is

due to the complainant than the two sums secured to be paid as mentioned in the deed of trust in that connection. In support of this denial, he makes an exhibit an agreement under his own and Pinkard's signatures, which after reciting the previous indebtedness of Ingersol by notes and judgments, stipulates that he was to convey twelve slaves to Pinkard, as well as to transfer them to Forsyth in Georgia by the 9th of September; warranting the delivery of the same free from any debt, demand or lien which Ingersol may have contracted. It was further agreed that Ingersol should remove the incumbrance of McDougald as well as one to one Watson, (which will presently be stated) and should satisfactorily secure the sum of $4,000 to be paid to Pinkard on the 1st January, 1841. After the performance of these acts, Pinkard was to release Ingersol from any further payment, as well as to deliver up the trust deed executed to Bailey. The agreement, however, was not to be held to discharge Underwood.

He also sets up a conveyance previously made by him on the 21st March, 1839, to one Watson, by which the same property conveyed in the deeds to McDougald and Bailey is conveyed in trust to secure Watson and other creditors therein named. All the debts proposed to be settled by this deed were past due at its execution, and one provision in it is, that the property shall not be sold, nor the possession of Ingersol disturbed until the expiration of twelve months from its date.

After this answer, the complainant filed an amended bill, in which he makes parties the executors of Watson and the creditors named in the deed to him. In this he charges the deed to be fraudulent, and the debts either wholly simulated or paid. He also sets out the agreement between himself and Ingersol of the 30th August, 1839, and insists that the slaves, though delivered, were not relieved from the incumbrances of McDougald and Watson's deeds of trust. He offers also to deliver the slaves or account for their value in any decree which may be made. He charges that the deed to Watson was made without his knowledge or concurrence, and that none of the creditors assented to the provisions of it, and that the two deeds to McDougald and Watson are void as to him, because the acknowledgment on which they were recorded was made before a person styling himself de-

puty clerk of the county court of Russell county. By a sup-plemental bill the complainant charges that he obtained judg-ment against Ingersol on the note last due from him and Un-derwood at the spring term, 1845, of the circuit court of Russell county, and that it remains unsatisfied.

The answers of the defendants to the amended bill are some-what lengthy, and so much as is necessary of each, to show the matters alledged in avoidance of the complainant's case may be thus stated.

Ingersol sets up and exhibits an agreement made between himself, McDougald, Watson, and Bailey, as the attorney at law and trustee for the complainant, under date of the 17th February, 1842. In this it is recited, that Ingersol having executed the several deeds of trust, previously referred to, and Bailey having advertised the property thereby conveyed to be sold on the 21st February, it was agreed between the parties, provided the complainant should not object to the agreement by or before the sales day, that all the lands and slaves included in said deeds of trust be sold, on the day and at the place previously mentioned in the agreement, under the deed to Bailey, according to the advertisement of the same—the land first, and the slaves afterwards, upon a credit of twelve months—the purchase money to be received in such manner as the trustees should determine—the slaves Stephen and his wife Esther, and Eveline and her infant child, to be bid off by Watson and conveyed to Wm. J. In-gersol, (a son of the defendant,) without further considera-tion. The proceeds of the sale of the remainder of the trust property, or the notes for which it should be sold to be appropriated as follows: *First*, to McDougald, $8,773— *next*, to Watson, $1,154—next $4,324 to the claim due and owing to A. B. Davis, as the assignee of Seaborn Jones— *lastly*, after the satisfaction of these claims, Bailey, as attor-ney and trustee for Pinkard, to receive $6,000. These sums were severally to be discharges of Ingersol from the claims of the parties, and the same result was to follow even if the sums before stated were not produced by the sales. The expenses of sale, including attorney's and sheriff's fees, to be paid by the trustees respectively, in proportion to the sum each should receive from the proceeds, and the sums thus

paid to be refunded to them out of the proceeds of the sale. It was also a stipulation of this agreement, that it should not be considered as releasing Underwood. He also insists that both Watson and McDougald assented to the transfer of the twelve slaves made to the complainant on the 30th August, 1839, though this consent was verbal only.

The answer of McDougald asserts that the debts mentioned in the trust deed to him were *bona fide*, and the deed made by Ingersol at his request, and accepted by him on the day of its date.

The executor of Watson asserts that the deed to Watson was made at the instance of a son and agent of Watson during his absence, but that it received his assent and was accepted by him in a short time after its execution.

Only one of the creditors, Seaborn Jones, asserts an interest under Watson's deed. He insists that he was at the time of its execution a creditor of Ingersol to the amount of $2,800 over and beyond certain notes for $4,000, assigned to A. B. Davis previously to the date of the deed, and that Ingersol told him he was secured in all his demands. He claims that the deed shall be considered as a trust for his benefit.

McDougald subsequently filed a cross bill, in which he insists that the property conveyed to him shall be sold under his deed. He also sets up his right as assignee of certain notes which are supposed to be specified in the deed to Watson as due to Seaborn Jones. The debt in that deed is to Seaborn Jones in divers notes and accounts to the amount of $4,000. McDougald insists that one note for $3,500, as well as another for $500, were executed from Ingersol to Jones for the price of a certain tract or tracts of land; that Jones executed a title bond only, and retained the titles in his own name as a security; that those notes were transferred by Jones to one Davis previous to the execution of the deed to Watson, and constituted the debt intended to be secured by it. The cross bill prays that the deed to Watson, if set up, may be declared to extend to these notes, and that otherwise the land purchased, which is part of that conveyed by the different deeds, may be in the first place subjected to the payment of that debt.

By an agreement between the solicitors for McDougald and

Pinkard, the cross bill was to be heard on the evidence taken on the original bill, and considered as if all the allegations were denied by Pinkard. The answer of Ingersol relies on the agreement of the 17th February, 1842, set out in his answer to the amended bill.

The cause was heard upon the original and amended bills, answers, exhibits, testimony, cross bill and answers, when the chancellor decreed the deed to McDougald as valid; that to Watson to be invalid, on the ground that the assent of Watson and the other creditors was not made to appear; retaining the complainant's bill, and directing an account to be taken of the debts secured by it; directing the production by the complainant of the twelve slaves conveyed to him by Ingersol, and that the entire property conveyed should be sold under McDougald's deed; the proceeds of the land purchased from Jones to be first applied to the payment of the notes held by McDougald as the assignee of Jones, and the remainder to go into the general fund, out of which the costs of the suit were first to be paid, then the debt to McDougald, and afterwards the debt to the complainant, as stated in the trust deed to Bailey. All the parties in interest sue out cross writs of error, to reverse this decree.

Pinkard assigns that the court erred: 1. In sustaining the trust deed to McDougald. 2. In establishing and enforcing the agreement between Ingersol and Pinkard of the 30th August, 1839, and in decreeing that Pinkard should return the slaves for the purpose of first satisfying McDougald's deed. 3. In decreeing the debts due on Jones's notes to be paid out of the proceeds of the land for which they were given. 4. Because the decree is uncertain and indefinite in decreeing what should be paid to the complainant after the satisfaction of McDougald's debt.

Ingersol assigns that the court erred: In not sustaining the agreement entered into by him with all the parties, of date the 17th February, 1842.

McDougald assigns that the court erred: 1. In declaring Watson's deed void. 2. In declaring that the notes held by him as assignee of Jones should be paid only out of the special fund to be produced by the sale of the land for which these notes were given.

Pinkard v. Ingersol, et al.

HEYDENFELDT and W. DOUGHERTY, for the complainant, insisted :   1. That the deeds to Watson and McDougald were void as unregistered deeds ; the deputy clerk, to perform a valid act, must act in the name of his principal.   [Godbolt v. Pl. and Mer. Bank, 4 Ala. Rep. 516.]   2. The want of assent of the beneficiaries, and the fraud in the debts secured by them to A. Ingersol renders the deed of Watson void. That to McDougald is avoided by his consenting to the fraud in Watson's deed, as both were parts of the same transaction. [Kemp v. Buckey, 7 Ala. Rep. 138; Elmes v. Sutherland, Ib. 262; P. & M. Bank v. Clarke, Ib. 765; Cummings v. McCullough, 5 Ib. 333 ; Veal v. Bliss, 9 Pick. 13.]   3. The agreement set out by Ingersol, and afterwards introduced in the amended bill, cannot be enforced partially.   Its whole object has been defeated, and therefore the complainant has the right to go on his other securities, and the last contract considered as dissolved.   [Skillern v. Mays, 4 Cranch, 137; Tucker v. Woods, 12 John. 190.]   An incomplete contract, by which one has the option to complete it at a particular time, raises a mutual right of rescision, [Ethridge v. Glover, 5 S. & P. 264; Martin v. Chapman, 6 Porter, 344; Cringan v. Nicholson, 1 H. & M. 428;] and will not be enforced when one alone is bound.   [Pratt v. Carroll, 8 Cranch, 471; Pratt v. Law, 9 Ib. 456; Benedict v. Lynch, 1 John. Ch. 370; Hatch v. Cobb, 4 Ib. 559; Morgan v. Morgan, 2 Wheat. 290 ; Colson v. Thompson, Ib. 336 ; Brashear v. Grubs, 6 Ib. 528.] When he who is to profit by a contract is the occasion why it is not performed, it is dissolved, [Champion v. Hartshorn, 2 Cowen, 494,] and the acceptance of another security does not extinguish a previous demand.   [Johnson v. Johnson, 11 Mass. 359; 5 Mass. 11; 6 Ib. 143; Smith v. Rogers, 17 John. 340.]

J. E. BELSER, for Ingersol, insisted :   1. That McDougald's assent to the deed to himself is clearly established, as well by his answer as by his conduct in proceeding to sell. [Moffat v. Ingraham, 7 Dana, 495.]   That to Watson, so far as he and Jones were concerned, was assented to the one by his agent and attorney at the execution, and the other before the complainant filed his bill.   This is sufficient to

validateit. [Cunningham v. Freeborn, 11 Wend. 241; Skip-with v. Cunningham, 8 Leigh. 272; Wheeler v. Sumner, 4 Mason, 483; Copeland v. Weed, 8 Greenl. 411; Bryden v. Moore, 11 Pick. 363; Everette v. Wolcott, 15 Ib. 94; Halsey v. Whitney, 4 Mason, 217.] 2. The original vendor of land and his assignee have a lien on it independent of the deeds to either party, therefore if the assent of Jones is established, his entire debt will be paid before that to the complainant can come in. [Haley v. Bennett, 5 Porter, 452; Roper v. McCook, 7 Ala. Rep. 318.] 3. If the deeds of trust to Watson and McDougald are valid, then the complainant must account for the twelve slaves transferred to him, if necessary to satisfy the trusts in those deeds. [Williams v. Burt, 7 Ala. Rep. 907; 4 Porter, 27.] 4. The agreements made between the parties subsequent to the trust deeds should be carried into effect. [Fowler v. Fuller, 6 Mass. 58; Violett v. Patton, 6 Cranch, 142; Townsly v. Sumrall, 2 Pet. 182; Mallory v. Sturgis, 3 Stewart, 95.] 5. Pinkard having received a portion of the property under the new agreement, in which the deeds of trust are referred to, cannot now set them aside and subject the property to the payment of his debts as they stood previously. [McGowan v. Garrard, 2 S. & P. 479; Butler v. O'Brien, 5 Ala. Rep. 322.]

McLester, for the defendants, Watson and McDougald, insisted: 1. The probates of the deeds are sufficient to warrant their registration. [Digest, 149, 19; Hobson v. Kissam, 8 Ala. Rep. 357; Kemp v. Buckey, 7 Ib. 141.] 2. So far as the grantees are parties in interest under deeds giving preferences, there can be no stronger evidence of assent than the acceptance of the deed. Such a deed is not within the decision of Elmes v. Sutherland, 7 Ala. Rep. 262. 3. The deed may be fraudulent as to some of the named creditors, but that does not avoid it as to Watson. [Anderson v. Hanks, June Term, 1845; Prince v. Sheppard, 9 Pick. 176; Doe v. Pilcher, 6 Taunt. 369.] 4. The deed to Watson received the assent of Jones, and therefore debts to him are covered by it, but independent of this, the notes of which McDougald is the assignee, are precluded by the implied mortgage in retaining the title.

Pinkard v. Ingersol, et al.

GOLDTHWAITE, J.—1. The equities of the several parties to this cause will be best ascertained by learning what were the rights of each growing out of the several deeds of trust, and how those which previously existed were thereby controlled. In doing this it will be unnecessary to advert to the point made, that the deeds to McDougald and Watson cannot be regarded as registered, in consequence of there being no proof beyond the acknowledgment of the grantor taken by the deputy clerk. That question was settled by the decision of Kemp v. Buckey, 7 Ala. Rep. 138, in the same way as here decided by the chancellor.

2. So far as the validity of the deed to McDougald was dependent on his assent to its provisions, that is clearly made out by his acceptance of the deed when it was executed. His answer to this point of the case is responsive to the bill which calls for a discovery as to this matter, and brings him within the influence of the principle alluded to in Elmes v. Sutherland, 7 Ala. Rep. 262, and settled in Hodge v. Wyatt, 10 Ib., 271.

3. The validity of the deed to Watson, if dependent on his consent, independent of the other creditors mentioned in it, would be established in the same manner; but the implication arising from this deed is, that the other creditors, as well as Watson, were required to assent to the delay of their several debts until the period stipulated for. There is no term in the deed to warrant the inference that Ingersol intended to secure one, in preference to another of those named, and as the delay of payment is the chief object of the deed, according to the principles declared in the cases just cited, the assent of all the creditors is essential. This is neither asserted nor shown—indeed the assent of some is expressly disproved. So far, then, as the rights of Watson and the other creditor, Jones, insisting on this deed, are based on it, nothing can be claimed.

4. If the cause stood alone on the deeds of trust, the entire property conveyed would be subject in the first place to the payment of the specified debts to McDougald, and the surplus to those due the complainant, but even then the difficulty would exist, whether the acceptance of this security

3

was not a waiver by the complainant of all of his claim against Ingersol, for the debt due from him and Underwood, which was not provided for by the trust. However doubtful this might have been, as a question of intention between the parties, it is put at rest by the subsequent agreements between the parties, with reference to the trust property, or portions of it. In the agreement between the complainant and Ingersol, under the date of 30th August, '39, it is expressly stipulated that the delivery of twelve slaves at a particular time and place, with security for $4,000, to be paid at a future day, should extinguish the entire demand, so far as Ingersol was concerned. It is true, this agreement was only partially performed, by delivering the slaves, but it is quite propable the existing deed of trust was then looked to as ample security for the future payment. As to the release by Watson and McDougald, of their lien on the slaves, which the agreement also stipulates for, Ingersol asserts the conveyance of the slaves was virtually assented to by them, and the subsequent agreement between all the parties of the 17th February, '42, goes far to sustain his assertion. In this neither McDougald or Watson assert any claim to these twelve slaves, and it is evident from other parts of the case, they were not then present. They do assert, however, that the sale as advertised by the complainant's trustee, shall take place as advertised by him, and it is scarcely possible he would advertise property for sale which his *cestui que trust* was already in possession of as owner. On the other hand, the agreement provides that *all* the property conveyed by the deeds of trust shall be sold—the lands first, and the slaves afterwards—but notwithstanding the generality of these expressions, it seems highly improbable the parties looked to the sale of the twelve slaves which Ingersol had previously conveyed to the complainant. This view is confirmed, in some degree, from the circumstance that the complainant is postponed as the last creditor to be satisfied, and the surplus remaining after the payment to him of $6,000, is to be paid to Ingersol—a matter entirely inconsistent with the fact that the complainant was then a creditor—if the slaves are excluded—of more than $12,000. We are left to grope in the dark, without the aid of allegation or testimony on either side, to explain the

apparent inconsistencies of this agreement, but it is distinctly relied on by Ingersol, in his answers to the amended and cross bills, and the other parties have not thought proper to amend their bills, and thus elicit explanation. They could not therefore complain if such a construction was given to this agreement as would make it consistent with the apparent justice of the case ; and if the decree of the chancellor could admit of affirmance on this construction, it would be the one we should give to the agreement. It may be true, that the trustee was not the authorized agent of the complainant, to assent to this compromise, but the agreement appears as an exhibit, and we must presume it was so proved at the hearing, as the decretal entry states the cause as having been heard on the exhibits, as well as answers and proofs. Whatever the true construction of this agreement may be, it seems to us to control the entire cause. All the parties to it, as well as the other person provided for by it, had actual or colorable rights under the several deeds of trust, and the agreement can be considered in no other light than the ascertainment and adjustment between themselves of these rights. It does not appear to have been the fault of Ingersol, that the settlement on this basis did not take place, and therefore he is entitled to have it carried into effect. Neither of the other parties seem to insist on it, though from what has previously been said, it is apparent the only title of Watson to participate in the trust fund, arises out of this agreement. So, too, the title of the assignee of Jones' notes, if resting on the deed only, would be defective, but under the agreement it is perfect.

It will be seen that McDougald, by his cross-bill, asserts, that he is the assignee of these notes, and that a lien upon the land, for which they were given, was retained by the vendor's withholding the legal titles at the time of sale, and transferring an equitable interest only by his title bond. There is no proof of these circumstances, and the facts of this bill are to be considered as denied. It is possible, a reference to the master might dispose of the difficulties in the way of a final decree, growing out of this defect, but as it is possible we may have mistaken the intention of the parties, in their agreement of February, '42, and as that may possi-

bly be modified by the production of the advertisement of the complainant's trustee, which is there referred to, or even the agreement, reformed, if any important matter is omitted by mistake, &c., it would be proper to remand the cause—the reversal of the decree is a necessary consequence of what has been said—in order that further proceedings may be had, not inconsistent with this opinion; and that the agreement of the 17th February, 1842, may be established, and made the basis of the decree—subject, however, to an account and allowance of all payments subsequently made by Ingersol.

Decree reversed and remanded for further proceedings, at the mutual costs of the complainant and McDougald, to be reimbursed from the sales of the property.