# MURPHY *vs.* BAREFIELD.

[BILL IN EQUITY TO REDEEM MORTGAGED SLAVES—CROSS BILL TO FORECLOSE.]

1. *Conditional sale construed.*—A written contract for the sale of several slaves, at a specified price for each, which uses present words of conveyance, and contains the additional stipulations, that two of the slaves are to remain in the possession of the vendor until the first day of January next thereafter, and that he "may redeem any and all the said negroes, at the valuation hereinbefore affixed to them, within twelve months",—is not a mortgage, but a conditional sale, with a reservation of the right to re-purchase.

2. *Validity of subsequent contract between parties having conflicting claims to mortgaged property.*—Persons who have conflicting claims to slaves previously conveyed by mortgage or conditional sale, to which they were not parties, may by subsequent contract settle and adjust their rights to the property; and such subsequent contract itself, irrespective of the character of the former contract, must be considered as the ascertainment and adjustment between themselves of their rights.

3. *Subsequent contract construed.*—If, by such subsequent contract, after reciting the previous contract and the conflicting claims which have arisen to the property, it is stipulated and agreed that one of the two negroes shall remain in the possession of each party "until the sums for which they were respectively mortgaged by fully paid" unto the party of the second part, who claims to be the assignee of the original mortgagee, or purchaser; the party of the first part "relinquishing all further right", and the party of the second part "obligating himself to convey to her perfect and complete titles whenever said sums respectively are paid",—the transaction is not on its face a mortgage, and does not authorize a court of equity to grant any relief to either party founded on it.

APPEAL from the Chancery Court of Monroe.

Heard before the Hon. WADE KEYES.

THE original bill in this case was filed by Sarah Murphy

against Joseph Barefield, and alleged the following facts: That on the 2d day of January, 1846, one Duncan W. Murphy, being in possession of two slaves (Bill and Suckey), and being indebted to Mrs. Nancy Harris in the sum of $2,297 60, mortgaged said slaves to her to secure said debt, and a copy of the mortgage, marked "exhibit A", is appended to the bill; that Mrs. Harris took possession under the mortgage of two of the slaves conveyed (Rachel and Tom), and has had their labor and services ever since, but the other slaves (Bill and Suckey, who alone are the subjects of this bill) were left in the possession of the said Duncan Murphy; that the negroes Bill and Suckey, at the time of the execution of this mortgage, were claimed by complainant as her own property, and said Duncan Murphy, recognizing her right to them, delivered them to her; that Mrs. Harris afterwards transferred and assigned to said Barefield (the defendant) the said mortgage, and her rights under it to said slaves; that Barefield, in the year 1847, without the knowledge or assent of complainant, took possession of the boy Bill, and threatened also to take Suckey; that he and complainant, in order to settle and compromise the controversy between them, entered into a written agreement respecting said slaves, which is appended to the bill, and marked "exhibit B"; that it was distinctly agreed and understood, at the time this last contract was entered into, that Barefield should convey and deliver up to complainant the boy Bill, whenever he should be paid the amount for which he was originally mortgaged to Mrs. Harris, and should likewise convey and deliver up Suckey, when she was redeemed; that Duncan Murphy has relinquished to complainant his right to redeem said slaves, and that she has frequently applied to Barefield for a statement and settlement of the said mortgage debt, which he refuses.

The prayer of the bill is, that an account may be taken of the mortgage debt, and of the hire and services of the slaves; that complainant may be permitted to redeem them, on paying the balance (if any) due on the mortgage; and for general relief.

"Exhibit A", above referred to, is as follows:

" Know all men by these presents, that I, Duncan W. Murphy, of the State of Alabama and county of Monroe, for and

in consideration of the sum of $750 for a negro man by the name of Tom, $500 for Rachel, $500 for a negro woman by the name of Suckey, $547 60 for a man by the name of Bill, to me in hand paid by Nancy Harris, of the county of Clarke and State of Alabama, do give, grant, bargain and sell all the right, title, claim and interest which I have in and to each and every one of the aforementioned negroes, to have and to hold, to herself and heirs, forever; it being expressly understood and agreed, that the said negroes Bill and Suckey are to remain in the possession of the said D. W. Murphy, until January, 1847; and it being further expressly understood, that the said Murphy may redeem any and all the aforementioned negroes, at the valuation hereinbefore affixed to them, within the time of twelve months of this date respectively. In witness whereof," &c.

(Signed by both parties, and attested by S. R. Davis.)

The subsequent agreement (" exhibit B") is as follows:

" Whereas, by certain articles of agreement, entered into on second day of January, 1846, between Nancy Harris and D. W. Murphy, a certain negro man, by the name of Bill, was sold by said Murphy to said Nancy Harris, for the sum of $547 60, and also a negro girl, by the name of Suckey, for the sum of $500, with a condition of redemption reserved to said Murphy, on the payment of the said sums of money respectively on or before the first day of January next thereafter; and whereas the said articles of agreement, since that time, have been transferred by said Nancy Harris to Joseph Barefield, who now has the entire interest arising out of said agreement referred to; and whereas a conflicting claim has been interposed by Sarah Murphy, to the said negroes above mentioned : Now be it known, that for the purpose of settling said conflicting claim, it is hereby agreed between the said Joseph Barefield and the said Sarah Murphy, that the said negro boy Bill shall remain in the possession of the said Joseph Barefield, and the girl Suckey in the possession of the said Sarah Murphy, until the sums for which they were respectively mortgaged by the said D. W. Murphy be fully paid unto the said Joseph Barefield; the said Sarah Murphy relinquishing all further right, and the said Barefield obligating himself to convey to said Sarah Murphy perfect and

complete titles, whenever said sums respectively are paid. In witness whereof," &c.

(Signed and sealed by both parties.)

The defendant answered the bill, denying that the contract between D. W. Murphy and Mrs. Harris, evidenced by " exhibit A" to the bill, was intended as a mortgage, but, on the contrary, alleging that it was an absolute sale of the slaves, and that an absolute bill of sale was executed at the time; that afterwards, on Murphy's representations that the slaves were family negroes, Mrs. Harris agreed to allow him the privilege of re-purchasing them within the time specified in the writing, and hired Bill and Suckey to him during the year. He denies that the complainant then had any right to the slaves, or that she asserted any; but admits that, on her afterwards asserting title to them, the contract evidenced by " exhibit B" to the bill was entered into for the purpose of settling their conflicting claims; and he denies that this writing is, or was intended to be, a mortgage. He alleges, also, that more than a reasonable time has elapsed since this last agreement was made, and yet the complainant has done nothing towards availing herself of the privilege, thereby secured to her, to redeem or re-purchase said slaves.

The defendant, after answering the original bill, filed a cross bill, asking that the complainant might be required, within a short time (to be fixed by decree of the court), to redeem said slaves under said agreement, and that, on her failure to do so, she might be forever barred of the privilege.

The testimony of S. R. Davis, the subscribing witness to the contract shown by " exhibit A", whose deposition was taken by the defendant, fully sustains the allegations of the answer as to the character of the transaction. He states that Murphy, being indebted to Mrs. Harris, had executed a deed of trust on his negroes to secure her, of which deed witness was trustee; that on failing to meet the debt, at the law-day of the deed, Murphy went with him to see Mrs. Harris, saying that he would prefer selling the negroes to her, as he could not raise the money, and thus avoid the expense of a sale under the deed; that the price of each negro was agreed on separately, and the sum total exceeded by a small balance the amount of the debt; that Mrs. Harris offered to pay this

balance in money, but Murphy said that he preferred to hire Bill and Suckey for the year, and this was assented to by Mrs. Harris; that Murphy then executed to Mrs. Harris an absolute bill of sale for the said four slaves, and the deed of trust was given up to him; that "some short while after this settlement, while the parties and witness were sitting together, Murphy said that he did not like to part with the negroes, because they were family negroes, and asked Mrs. Harris if he could redeem them, or any of them, by the first day of January next thereafter; that Mrs. Harris at first refused, saying that she had had a great deal of trouble about it, but she afterwards consented"; and that the writing exhibited with the bill was then executed, under this agreement.

On final hearing, the chancellor dismissed the bill and the cross bill, at the costs of the parties by whom they were respectively filed; from which decree each party now appeals, and here assigns it for error.

E. S. DARGAN, for the complainant in the original bill, contended that it was immaterial whether the contract between Mrs. Harris and D. W. Murphy was a conditional sale or a mortgage, since the parties to this suit, by their subsequent agreement, recognized it as a mortgage; that this subsequent agreement, by which the former contract was construed, is valid and binding on the parties themselves, and the courts will abide by their construction.

WILLIAMS & COCKE, contra, made the following points:

1. That the original contract between Murphy and Mrs. Harris, as shown by the testimony of Davis, was an absolute sale and purchase of the slaves, and the subsequent written agreement, if not nudum pactum, was only a conditional sale, and not a mortgage; and, as the condition was not performed, Murphy could claim nothing under the contract.—Farrelly v. Robinson, 16 Ala. 472; Turnipseed v. Cunningham, ib. 507; McKinstry v. Conley, 12 ib. 678; Bryan & McPhail v. Cowart, 21 ib. 93; Sewall v. Henry, 9 ib. 24.

2. That the subsequent agreement between the parties to the suit was not supported by a sufficient consideration—the

"compromise of a conflicting claim", which is not shown to be valid and subsisting.

3. That that agreement was not a mortgage, and will not be held a mortgage, even if the parties had so treated it.— Rogers v. Kneeland, 13 Wend. 114; 2 Edwards' Ch. R. 138; 1 Powell on Mortgages, 139, note.

4. That the cross bill should have been sustained.—Story's Equity Pleadings, §§ 397, 398, 399 ; Wickliffe v. Clay, 1 Dana, 589; Daniel v. Morrison, 6 ib. 187; 5 B. Mon. 515.

RICE, J.—The legal effect of the deed, set forth in exhibit A to the original bill, is, that the transaction between the parties to it, evidenced by its terms, was not a mortgage, but a conditional sale of the slaves by Duncan W. Murphy to Nancy Harris, with the right to re-purchase any or all of them within twelve months from its date, by paying within that period the respective values or prices fixed on them in the deed.—Bogan v. Martin, 8 Ala. 807; McKinstry v. Conly, 12 ib. 678; Goodman v. Grierson, 2 Ball & Beatty's Ch. R. 274 ; Conway v. Alexander, 7 Cranch's R. 237; 1 Powell on Mortgages, 138–39, and notes ; Holmes v. Grant, 8 Paige R. 260; Glover v. Payn, 19 Wend. R. 518; Barrell v. Sabine, 1 Vernon, 268; Robinson v. Cropsey, 6 Paige's R. 480; Brown v. Dewey, 2 Barb. Sup. Ct. Rep. 28.

Conceding, however, that said deed was intended by the parties to it as a mortgage, and is really a mortgage, it certainly was competent for the parties to this suit, who are not parties to said deed, to make a subsequent contract, which should define and fix their own rights to the property therein mentioned. This is what they have done. The subsequent contract is set forth in the original bill and exhibit B thereto; and must be considered as the ascertainment and adjustment between themselves of their rights to the property therein mentioned, which is the property involved in this suit.—Pinkard v. Ingersol, 11 Ala. 9 ; Lightfoot v. Strahan, 7 ib. 444 ; Wallis v. Long, 16 ib. 738; McKinstry v. Conley, 12 ib. 678.

This subsequent contract is not, on its face, a mortgage.— See authorities cited in first paragraph above. The complainant in the original bill does not aver or pretend that it was intended as a mortgage. The parties must abide by its terms.

There is no averment in the original or cross bill, which authorizes a court of chancery to decree any relief to either party, founded on said subsequent contract.—McLeod v. Powe & Smith, 12 Ala. 9.

The decree on the bill and cross bill must be affirmed ; Sarah Murphy and her surety must pay the costs of her appeal, and Barefield and his surety must pay the costs of his appeal.