## HAMMOND ET AL. v. MASON AND HAMLIN ORGAN COMPANY.

1. A contract concerning the use of a patented invention bound the " parties and their legal representatives to the covenants and agreements of the contract." A plea alleged that the defendants " are the legal representatives and successors and assignees in business and interest " of one of the parties. The question being on the sufficiency of this plea, *Held*, that the defendants were the legal representatives of that party within the meaning of the contract.

2. An allegation that L. refused to manufacture and furnish his invention as he had agreed to do, is equivalent to an allegation of a demand on him to do so, and a refusal.

3. Where an inventor signed several different agreements with the same party, on the same day, for the sale of his invention and for a license to use it, they must all be construed together; and if it is apparent that he intended to convey the right to use a new invention in connection with former patents, under any renewal or extension of the former, the grantee or assignee is protected, though the improvement was never patented, and though the

reissued patent was extended afterwards.   It is a question of intention to be gathered from all the instruments of writing in the case.

4. The rights growing out of an invention may be sold, including the right to use it, though no patent ever issues for it.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

*Mr. B. E. Valentine* for the appellants.

*Mr. Frederick H. Betts, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

On the eighteenth day of November, 1856, a patent issued to Lafayette Louis for an invention which produced a tremolo in the musical notes of melodeons or reed instruments, and which has since become known as the tremolo attachment. Louis surrendered and obtained reissues of this patent on the twenty-sixth day of February, 1867, and again on the twenty-sixth day of May, 1868; and after his death his wife, who was his administratrix, obtained in July, 1871, what appears to have been both a reissue and a renewal for seven years of the same patent, the whole right in which she assigned to plaintiffs May 30, 1872.

Whereupon the present suit, which is a bill in chancery, is brought against the defendants, as infringers, for an injunction and for an account of profits, and other relief.

The defendants, not denying the allegation of the use of the invention, interpose a plea; and on this plea the case was heard and a decree rendered dismissing the bill.

The plea sets up the right to use the invention described in the reissued patent of 1872, in defendants, as shown by five several written instruments, signed by Louis in his lifetime, which were made parts of the plea as exhibits A, B, C, D, and E.

The first of these is a contract between said Louis and Henry Mason and Emmons Hamlin, for the use by the latter in their melodeons, of the original invention of Louis, and is dated April 10, 1861.   Exhibit B is a copy of an application by Louis for a patent for an improvement in his tremolo attachment, with the accompanying specifications, and is dated Sept. 25, 1868. Exhibits C, D, and E are all dated the same day as this appli-

cation, and are contracts between said Louis and the Mason and Hamlin Organ Company for the sale of this improvement, and its use in connection with the invention already patented in 1856, and reissued in 1867 and 1868.

Exhibit A is a contract by which Louis agrees to furnish to Mason and Hamlin his patent tremolo attachment in such numbers and as they may order them, at one dollar for each attachment; and if he fails to furnish them as ordered, Mason and Hamlin are licensed to make, use, and sell the same in connection with all musical instruments manufactured by them anywhere in the United States. The closing paragraph of this contract declares that "the said parties mutually bind themselves and their legal representatives to the covenants and agreements herein contained, to continue in force until the full expiration of the term for which said letters-patent have been granted, and during such period as the same may be hereafter *renewed or extended.*"

It is not alleged that any of the subsequent contracts abrogated this one. It cannot be denied that this contract extends to the renewal of the patent which was assigned to plaintiffs. The only question on this branch of the plea is, whether the Mason and Hamlin Organ Company are entitled to the rights of Mason and Hamlin.

As the case was decided on the sufficiency of the plea, its allegations must be taken as true; and all that can be reasonably inferred from those allegations, and from the various exhibits which it makes, must also be held to be true. The plea does allege that the defendants are "the legal representatives, and successors, and assignees in business and interest, of said Mason and Hamlin." This allegation seems to be full and specific; and the only doubt of its sufficiency arises as to whether the legal representatives spoken of in the agreement are or can be others than executors, administrators, or heirs. Whatever doubt might be entertained on this point, we think is solved by the fact that Louis, in the subsequent contracts of 1868, seems throughout to treat with the corporation as successors of Mason and Hamlin in the contract of 1861. For in exhibit E he sells and assigns to the company the exclusive right to use his supposed improvement under the patent of

1856 and all the subsequent reissues, and as this new improvement required the use of the old, he seems here to recognize the right of the company to control the license he had previously granted to Mason and Hamlin.

We are of opinion, therefore, that the defendant corporation is entitled to the benefit of the contract between Mason and Hamlin, covered by exhibit A, and that this gives them the right to use the attachment under the extension of the original patent now assigned to plaintiffs.

It is said that defendants never demanded these attachments, and, therefore, they had no right to make them.

But the allegation is full that Louis at all times *refused* to manufacture and furnish the attachment to defendants, and we think under the contract this authorized them to make them for themselves.

The court below, however, rested its decision on another ground, which we think equally conclusive.

As we have already said, Louis signed these contracts with the defendant company on the same day that he made his application for a patent for his improvement in the tremolo. The supposed improvement consisted in a different construction of the parts already patented by him. By the first contract (exhibit C) he *sold* to the defendant *this* invention wholly, and authorized the patent to issue to the company. By the second (exhibit D), he licensed them to use this new invention or improvement in connection with his former patents, and in connection with a patent of his of 1862 for an improvement in pianos with melodeon attachments; and the company agreed to pay him a royalty of one dollar each for his new tremolo attachment, at an average of forty attachments per month. The third contract (exhibit E) provides that if the company fail in securing a patent for the improvement sold to them, referring to his original patent and reissues, and to his sale of the later invention, and his claim to use it in connection with the old patents, he grants to the defendants the exclusive right, under the letters-patent already granted, and under *any* and all reissues thereof, to make, use, and sell the specific mechanism described and set forth in the application for the new patent.

Without elaborating this matter, we concur in the opinion

of the Circuit Court, that Louis, having *sold* this *invention*, and doubt existing whether the purchasers would obtain a patent for it, intended by this contract and by exhibit D to secure to them the benefit of the exclusive *use* of that invention, in connection with his first mechanism, so long as the latter was protected by any patent founded on his right as inventor. It was this use for which defendants are sued in this case.

While it is, perhaps, not necessary to decide whether in any case a sale of an invention which is never patented carries with it any thing of value, we are of opinion that the rights growing out of an *invention* may be sold, and that in the present case the sale, with the right to use it in connection with the existing patent and its reissues or renewals, protects defendants from liability as infringers. *Decree affirmed.*