(125 So. 28)

**FIRST NAT. BANK OF LINCOLN v. CASH et al. (7 Div. 878.)**

Supreme Court of Alabama. Nov. 7, 1929.

Rehearing Denied Dec. 19, 1929.

Harrison & Stringer, of Talladega, for appellees.

Knox, Dixon, Sims & Dixon, of Talladega, for appellant.

THOMAS, J. The court granted relief to complainants, canceled the mortgages as a cloud upon the title to real property of the trustees, and denied the relief prayed for in the cross-bill.

There is no dispute in the testimony. The decision rests on the construction given the last will of J. O. McCullars, deceased.

The general rule of vested or contingent legacy in this jurisdiction is thus stated in Bingham v. Sumner, 206 Ala. 267, 273, 89 So. 479, 485: "It is established that, where a future time for the payment of a legacy is defined by a will, a legacy is vested or contingent according as it appears whether the

testator's intention was to annex time to the payment of the legacy or its gift—whether futurity is annexed to the substance of the gift or to the time of payment only. Gunter v. Townsend, supra, 202 Ala. 166, 79 So. 644; Pearce v. Pearce, supra, 199 Ala. 497, 74 So. 952; Marr v. McCullough, 6 Port. 507; Gregg v. Bethea, 6 Port. 9; McLeod v. McDonnel, supra [6 Ala. 236]; McLemore v. McLemore, 8 Ala. 687; High v. Worley, supra [33 Ala. 196]; Wynne v. Walthall, 37 Ala. 37; Andrews v. Russell, 127 Ala. 195, 28 So. 703; Johnson v. Terry, 139 Ala. 614, 36 So. 775; Crawford v. Engram, supra, 153 Ala. 425, 45 So. 584; Montgomery v. Wilson, 189 Ala. 200, 66 So. 503. This is the traditional mode of initiating discussion of whether a postponed gift or devise is vested or contingent. If futurity is annexed to the substance of the gift or devise, the vesting is suspended; but if it appears to relate to the time of payment or delivery of possession only, it vests at once. L. R. A. 1918E, p. 1099; L. R. A. 1915C, p. 1025; 23 R. C. L. 506."

Primary questions for decision are whether the testator required an equitable conversion of his real property and made disposition thereof as personalty, and what was the nature of estates or interest devised or bequeathed to the widow and children of testator.

The rule of equitable conversion has long obtained in this jurisdiction. The general rule as stated by Mr. Pomeroy was adopted in Allen v. Watts, Ex'r, 98 Ala. 384, 388, 11 So. 646. It is declared: "Mr. Pomeroy says: 'Conversion has been briefly and accurately defined as "that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendible as such."' 3 Pom. Eq. Jur. § 1159. In the note to Ford v. Ford [33 N. W. Rep. 188,] 5 Amer. St. Rep. 117–141, it is said: 'It is so well established as to be at this time beyond controversy that an estate will be considered as of that kind of property into which it is directed to be converted; that is, a direction in a will to convert realty into money operates as an equitable conversion, and the realty is thereafter to be deemed personalty in equity; and money directed to be converted into land is, in equity, considered as such for all intents and purposes, and passes, therefore, by devise, and descends to the heir.' The doctrine of conversion is an application of the maxim that equity regards that as done which ought to be done. The purpose at the foundation of the doctrine is to give effect to the intention disclosed in the will, deed, or contract, as the case may be. If from the terms of the provision in question an intention is manifested that the original form of the property shall be changed, and that the beneficiary is to have the property in another form, equity proceeds upon the theory that the change has already been made, and considers the beneficiary as entitled from the beginning to that kind of property which will remain when the change shall have been actually made."

Likewise, in Goodwyn v. Cassels, 207 Ala. 482, 484, 93 So. 405, 407, it is said: "Under the maxim that equity regards as done that which ought to be done (Craig v. Leslie, 3 Wheat. 563, 578, 4 L. Ed. 460; 21 C. J. § 191, p. 201), it is established that, where a testator directs the lands or other properties to be sold and converted into money on his death, there takes place what is known as an equitable conversion; and, so far as concerns the will of testator as to the land of his estate held at his death or thereafter purchased or acquired by his trustee as a part of the trust estate, it becomes converted, under this doctrine, into money, and is governed by the laws relating to personal property rather than that relating to land (Hibler v. Oliver, 193 Ala. 369, 375, 69 So. 477; Flomerfelt v. Siglin, 155 Ala. 633, 639, 47 So. 106, 130 Am. St. Rep. 67; Taylor v. Crook, 136 Ala. 354, 377, 34 So. 905, 96 Am. St. Rep. 26; Allen v. Watts, 98 Ala. 384, 388, 11 So. 646; Moore v. Campbell, 102 Ala. 445, 14 So. 780; Johnson v. Holifield, 82 Ala. 123, 2 So. 753; High v. Worley, 33 Ala. 196). See, also, McKleroy v. Musgrove, 203 Ala. 603, 615, 84 So. 280; Tatum v. C. B. & T. Co., 185 Ala. 249, 255, 64 So. 561; Bispham's Principles of Equity (6th Ed.) § 307 et seq.; 3 Pom. Eq. Jur. (3d Ed.) §§ 1160–1162. If an imperative provision in a will directs that testator's real estate be sold, the doctrine of equitable conversion is not inapplicable merely because the same is not to be accomplished until some specified future time. Massey v. Modawell, 73 Ala. 421; High v. Worley, supra; 1 Tiffany's Real Prop. (2d Ed.) §§ 118, 120, 316."

And this rule has been followed in later cases. Peters Min. Land Co. v. Hooper, 208 Ala. 324, 327, 94 So. 606; Pitts v. Howard, 208 Ala. 380, 94 So. 495; Bingham v. Sumner, 206 Ala. 266, 89 So. 479.

These cases by our court are in line with the weight of the general authorities; that is to say, according to the weight of authority, where land is directed by a testator to be sold at, within, or after a definite future time, it is to be regarded as converted into personalty as of the time of the testator's death, and all property rights therein and thereto must be determined as if actual conversion had taken place at that time. Where a sale is directed to be made on the death of the testator's widow, or on the arrival of children at a specified age, or after or within a certain period, the property rights of the beneficiaries in the proceeds of sale will be regarded as existing in personalty without regard to the remoteness of the time fixed for the actual conversion of the land by sale. 6 R. C. L. 1087. That is,

where a will directs the land be sold and converted into money, under the doctrine of conversion, the land is treated as money from the death of testator (Allen v. Watts, Ex'r, 98 Ala. 384, 11 So. 646); and a direction for the postponement of the sale, until the happening of a future event, does not prevent the operation of the principle (High v. Worley, 33 Ala. 196).

■ Equitable conversion may be defined as that constructive alteration in the nature of property by which in equity real estate is considered for certain purposes as personalty and transmissible and descendible as such, or personal estate as realty. 6 R. C. L. 1065. And this rule is most frequently applied in solving questions concerning the validity and execution of trusts, in determining the legal character of the interests of beneficiaries, the devolution of property as between real and personal representatives, and for other similar purposes. And one who claims property under an instrument directing the conversion takes it in the character so impressed, and any disposition thereof will be so governed or subject to the trust. 6 R. C. L. 1066, 1067. See Lambert v. Morgan, 110 Md. 1, 72 A. 407, 132 Am. St.,Rep. 412, 17 Ann. Cas. 439.

■ And where a gift is not of land, but of the proceeds of land to be sold, and of personal estate, the quality of personalty must be given to the proceeds of the real estate to all intents, and not merely for any particular purpose expressed in the will. It is in trusts to sell land and pay over the proceeds, and in those exactly opposite, to use money in the purchase of land which is then to be conveyed, that the doctrine of conversion finds its special field of operation. Goodwyn v. Cassels, 207 Ala. 482, 93 So. 405; 6 R. C. L. 1067.

■ Had Maggie N. Cash (nee McCullars) a vested or contingent interest in the land as such owned by J. O. McCullars at the time of his death and devised by the will? There is a decision to the effect that where, in his will, a testator directs that his estate should be kept together, and the rents, incomes, and profits used for the support and maintenance of his family, and that, as his children arrive at the age of 21 years, respectively, such child should receive his or her pro rata share of the estate, and it is further directed "that in the event either of my said children die before attaining the age of twenty-one years, * * * then the share of my estate of such deceased shall be divided in equal parts between the survivors," which held that the devisees take under the will a contingent estate (and not a vested estate) and upon the death of either of the children before arriving at the age of twenty-one years, the share of such child falls to the surviving children of the testator. Johnson, Executor, v. Terry, Gdn., 139 Ala. 614, 36 So. 775. See Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Miller v. Wall, 216 Ala. 448, 113 So. 501; Bingham v. Sumners, 206 Ala. 266, 89 So. 479; Abrahams v. Abrahams, 219 Ala. 533, 122 So. 625.

And in Collier, Ex'r, v. Slaughter's Adm'r, 20 Ala. 263, it was declared that, where a testator by will has directed that his estate should be kept together until his daughter married or attained the age of 21, and that in the meantime she and his three stepchildren, Ellen, John, and Lawrence, should be supported and educated out of the proceeds; and there was another clause of the will that, "when my daughter become of age, or is married, she is to have my farm," etc. (describing it), "and one-half of my personal estate, money on hand, and claims of every kind, due or to become due, for money or personal estate. The other half of my personal estate, as just above stated, I wish and direct to be equally divided amongst my three step children above named, as they respectively become of age, or Ellen may marry with the approbation of her guardian. But in the event that any or all of my step children shall die, before they arrive of age, or Ellen may marry, as aforesaid, then the amount herein devised to them, or either of them, as may happen, is to be divided as follows," etc.—it was held the legacies to the stepchildren did not vest in them absolutely upon the testator's death, but were contingent until the legatees respectively arrived at the age of 21, or Ellen married with the approbation of her guardian; and that, Ellen having married under 21 without the approbation of her guardian, the share of one of the stepchildren who afterwards died before reaching the age of 21 did not pass to his personal representative. Bingham v. Sumner, 206 Ala. 266, 89 So. 479, L. R. A. 1915C, p. 1135; L. R. A. 1917D, pp. 468, 471, 480.

It is also declared by this court that, where a testator directed his executors to keep together the entire estate, to cultivate the plantation with the slaves, and to apply the proceeds of the crops to the support of his family and to the education of his children, and gave them power to sell property, and to manage the estate as they thought would be most conducive to the interests of the estate, and will contained, in addition to a specific bequest of three slaves to one daughter, the following clauses: "It is my further will and desire, that in the event of the marriage of my wife, * * * or of either of my daughters, or of the child with which my wife is now pregnant, or upon either of my children arriving at the age of twenty-one years, then my said executors shall have a division of all my property, both real and personal, and of whatever kind it may consist, and assign and give to my said wife, or my said children when they shall marry or arrive at age as aforesaid, a child's part of my

said estate, which I give to them and their heirs forever. * * * In explanation of the foregoing bequest as to my plantation, it is my will and desire, that in the event of my wife's marriage, or of the marriage of any one of my children, or of any one of them arriving at age as aforesaid, that my property be then equally divided among them, giving each one, as before stated, a child's part of the same, and that the plantation be still managed and kept up" by my said executors, "for the benefit of my other children." The testator's family consisted of his wife and two daughters, one of whom was born of a former marriage—held that the legacies were contingent, and that therefore only those legatees who were living at the happening of the contingency on which the division was to take place were entitled to share in the estate. Travis v. Morrison and Wife, 28 Ala. 494.

The Travis Case, supra, has been cited with approval in Phinizy v. Foster, 90 Ala. 262, 7 So. 836; Duncan v. De Yampert, 182 Ala. 528, 536. 62 So. 673; Bethea v. Bethea, 116 Ala. 265. 271, 22 So. 561; Johnson v. Terry, Gdn., etc., 139 Ala. 614, 618, 619, 36 So. 775; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; Bingham v. Sumner, 206 Ala. 266, .268, 89 So. 479; Steele v. Crute, 208 Ala. 2, 93 So. 694; Brizendine's Case, 211 Ala. 694, 697, 101 So. 618; Crawford v. Carlisle, 206 Ala. 379, 384, 89 So. 565.

When all the provisions of Mr. McCullars' will are considered, its intent and purpose shown is that Mrs. Cash have only a contingent interest in the cash into which the real property of testator was required to be converted and divided at the period fixed and specifically indicated by testator. Such an interest, as we shall indicate, was not subject to sale or mortgage by such prospective beneficiary with only a contingent interest in the proceeds of the equitable conversion required.

The acts of Mrs. Cash, of which respondent and cross-complainant complain, were, in fact, as an individual, and *not as a trustee*. If such acts had been in her capacity as trustee, they would not have been binding upon the trust estate, for the reason that, where there were several trustees created by the will, all of such trustees are required to act jointly. Henderson v. Henderson, supra. That is to say, when the administration of a trust is vested in cotrustees, they all form the collective trustee, and must therefore execute the duties of the office in their joint capacity. This result and principle enters into all cases depending on the discretion and judgment of the trustees, in contradistinction to acts of a mere ministerial nature. The authorities in other jurisdictions are to the effect that cotrustees, in a sense, take as joint tenants, and must all join in any sale and conveyance of the trust property; and a conveyance by one of two trustees, while the other is acting as such, does not pass a legal title. A deed of land executed by one trustee does not convey his share, as in the case of ordinary joint tenants, and a separate conveyance by each trustee of his aliquot part or separate share will be void. A trustee having once accepted the trust in any manner, a purchaser cannot safely dispense with his concurrence in a sale of the trust estate, notwithstanding he may have attempted to disclaim and although he may have released his estate to his cotrustees. 26 R. C. L. pp. 1333, 1334.

The acts of Mrs. Cash as an individual would not serve to defeat the trust estate created by the will, or estop the trustees in the exercise of their rights and duties in regard to the trust properties. This is a rule of general application, that an act done in a representative capacity will not estop one in his individual capacity, and vice versa. 21 C. J. 1184, and many cases cited thereunder.

It is insisted that the trustees cannot maintain the bill without their formal acceptance of the trust. Acceptance of trust is ordinarily presumed and may be inferred from voluntary interference with the trust property or acts done in performance of. duties of the trust, and it is not required to be manifested by express words of acceptance. 1 Perry on Trusts, § 261; 38 Cyc. 252, 325, 604; Kennedy et al. v. Winn et al., 80 Ala. 165; 26 R. C. L. 1191, § 28. See Graham's Case, 205 Ala. 647, 89 So. 25; Pinkard v. Ingersoll, 11 Ala. 9; Conyngham's Case, 1 Vesey Sen. Rep. 522; Wich v. Walker, 14 Eng. Ch. Rep. 702.

The record discloses that in 1911 J. O. McCullars made the will in question; that at this time the First National Bank of Lincoln was not interested in said property; that said McCullars was the owner with a right to make a will disposing of it as he saw fit, and as he did, within the law. This will was duly admitted to probate in 1916. According to the second item thereof, all property owned by testator was given to trustees, subject to the trusts thereinafter provided. The language employed is "in trust, nevertheless, for the purposes and uses hereinafter stated and described," and Maggie N. McCullars · is named as trustee. In item 11 it is further provided that, when Fannie L. McCullars (now Fannie McCullars Lyle) and Charles A. McCullars become 21 years of age, they shall become joint trustees with Maggie N. McCullars, with active duties and discretionary powers imposed by the will. Thus was the title to the property vested in the three trustees subject to the trusts therein provided. The trustees are given the power of management, with that necessary discretion as to same, and are directed in what way to expend the income (in numerical parts) for the

several beneficiaries; provided (item 8) that, when the youngest child of J. O. McCullars "then living" shall "arrive at twenty-one years of age," all of testator's property shall be converted into cash by said trustees, and "such cash be divided between the several children" named under that will and testator's "said wife, if she be then living." It is certain that, under the terms of this will, the real estate, in so far as the interest of the several beneficiaries was concerned, was converted into cash and treated as personalty from the time of the death of testator. Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493; Pearce v. Pearce, 199 Ala. 491, 505, 74 So. 952; Crawford v. Carlisle, supra.

The legal title to this property was in the several trustees for the time antedating the "arrival at twenty-one years of age of (testator's) my youngest child then living," and was subject to the trust, and not in the designated, prospective beneficiary as the wife who must be in life when the youngest child then living arrives at 21 years of age. The other beneficiaries had not title in the property in question as real estate (as affecting the trustees), only as that in personal property, the proceeds of the conversion required by testator. Such being the effect of the will as to the wife, she had no title or vested interest in the real property, and her mortgages thereof, as against the trustees, were not valid mortgages. The trial court, in the decree, canceled at the suit of the trustees to the extent that they purport to be mortgages on the real estate. There is authority for such action. Lambert v. Morgan, 110 Md. 1, 72 A. 407, 132 A. S. R. 412, 17 Ann. Cas. 439. The beneficiaries subject to the contingencies to be adverted to had the right to receive a sum of money out of rents and profits, annually, and out of the proceeds of the sale when conversion takes place and is accomplished under the law of that testament. As affecting the rights of the trustees as to the trust estate and the due execution of the trust, the real property was not subject to Mrs. Cash's mortgages. Whatever interest any beneficiary took under the will, it was not an interest in real property, and was the result of or on account of the doctrine of equitable conversion which is applied in this state. Goodwyn v. Cassels; Allen v. Watts, supra.

■ It would appear that the mortgages by Mrs. Cash and her second husband to appellant bank are without binding effect upon the mere contingent interest provided in the first husband's will for the wife; these contingencies therein introduced as to her interest being uncertain events, viz.: (1) *her death before the youngest child (then living)* becomes twenty-one years of age, an uncertain event in time; or (2) *her marriage again and leaving children* by such subsequent marriage, uncertain events of marriage and birth of children; and (3) her death before the youngest child reaches twenty-one before a given date.

What then of the equities set up in the cross-bill· as to the after-acquired contract interests in the lands or equities, or in and to the proceeds of the sale of the lands or release of interest therein by Charles A. McCullars, Fannie McCullars Lyle, and J. Henry McCullars to Mrs. Cash?

■ It is established in this jurisdiction·(1) that, where a mortgage contains covenants of warranty (section 6926, Code), after-acquired title inures to the benefit of the mortgagee, and the property embraced therein and so acquired is bound by the mortgage lien. 41 C. J. § 395, p. 478; Hunter v. Taylor, 189 Ala. 104, 66 So. 671; Vary v. Smith, 162 Ala. 457, 50 So. 187; Hall v. Slaughter, 155 Ala. 625, 47 So. 103; Chapman v. Abrahams, 61 Ala. 108; Howze v. Dew, 90 Ala. 178, 183, 7 So. 239, 24 Am. St. Rep. 783. Beneficiaries of a trust, who are without disability and whose rights are vested in the corpus or subject of the trust properties, may deal with that interest in the trust property and convey the same in equity, and subject the same to the payment of debts. Smith v. Moore, 37 Ala. 327; Jones v. Reese, 65 Ala. 134; Taylor v. Harwell, 65 Ala. 1, 13; Hartwell v. Mobile Towing & Wrecking Co., 212 Ala. 313, 314, 102 So. 450; Henderson v. Henderson, 210 Ala. 73, 91, 97 So. 353.

■ At the time the loans and mortgages were made ($730.60, May 29, 1920; $621.50, July 23, 1920) by Mrs. Cash (née McCullars) and husband, two of the legatees or devisees under said will, Charles A. McCullars and Fannie McCullars Lyle, on February 28, 1918, for a recited consideration of $2,834.78, paid by Mrs. Maggie N. McCullars (Cash) conveyed "all (our) right, title and interest of every kind, character and description in and to all real estate or personal property belonging to the estate of J. O. McCullars, deceased, or which belonged to said J. O. McCullars at the time of his death, and we do further accept said sum in full settlement of any and all claims whatsoever and of any and all interest whatsoever we may have in and to the estate of J. O. McCullars, deceased, or of any property real or personal belonging to the estate of said J. O. McCullars, deceased, or which belonged to the said J. O. McCullars, deceased, at the time of his death, and we do hereby release the said Mrs. Maggie N. McCullars from any and all claims which we may have against her as Trustee as appointed in the said will of the said J. O. McCullars, deceased, or as Executrix of the estate of J. O. McCullars, deceased, or as an individual." Likewise, on September 30, 1922, Elva McCullars and J. Henry McCullars, for the consideration of $1,428 "to us in hand paid by Mrs. Maggie N. Cash, formerly Mrs. Maggie N. McCullars,

the receipt whereof is hereby acknowledged, do hereby bargain, sell and convey unto the said Mrs. Maggie N. Cash, all our right, title and interest of every kind, character and description in and to all real estate or personal property belonging to the estate of J. O. McCullars, deceased, or which belonged to the said J. O. McCullars at the time of his death and we do accept said sum in full settlement of any and all claims whatsoever and of any and all interest whatsoever we may have in and to the estate of the said J. O. McCullars, deceased, or of any property real or personal belonging to the estate of the said J. O. McCullars, deceased, or which belonged to the said J. O. McCullars, deceased, at the time of his death, and we do hereby release the said Mrs. Maggie N. Cash from any and all claims which we may have against her as Trustee as appointed in the will of the said J. O. McCullars, deceased, or as Executrix of the estate of J. O. McCullars, deceased, or as an individual. We do also hereby acknowledge receipt of the amount due us from Mrs. Maggie N. Cash due us from the estate of the Mother of J. Henry McCullars and release the said Mrs. Maggie N. Cash from any liability as Executrix of the last will of J. O. McCullars, deceased, or as an individual, of all sums due from the estate of J. O. McCullars, deceased, and acknowledge the receipt of all sums due from the estate of the Mother of J. Henry McCullars" conveyed. These grantors had a vested interest in the estate of their father, and likewise had the right, by contract within the law, to convey or incumber the same in such wise as that a court of equity will enforce the same. Thorington v. Thorington, 111 Ala. 237, 20 So. 407, 36 L. R. A. 385.

The evidence of Mrs. Cash is to the effect that she did not purchase these interests; that the instruments exhibited were receipts for distributive shares or interests or formal acknowledgments for advancements made to said devisees or legatees.

It is immaterial under the cross-bill whether these instruments be held as receipts for moneys distributed by such trustee or personal representative, or are evidences of the purchase by Mrs. Cash of the equitable interests of said grantors, devisees in their father's estate. It follows, therefore, that the vested interest in said grantors, under the will of J. O. McCullars, of the three children of J. O. McCullars, was invested in Mrs. Cash. One of these children is over 18 years of age. Of the remaining children who are interested in the execution of the trust, three are over 18 years of age and two are minor sons. The youngest was short of his majority by about 8 years. It results from this state of facts that, under the law governing the trust as created by the will of Mr. McCullars, a final distribution of the estate be made after the conversion of said property into cash; that

the proceeds of the sale thereof under the rule of equitable conversion set up by the testator be given to said cestui que trusts or their grantees or assigns. According to the evidence of Mrs. Cash, the youngest child, in May, 1928, was 12 years of age, or was about 13 years of age at date of the decree.

At the coming to majority of the youngest living child of testator, Mrs. Cash as an individual will have the right of possession of the acquired interests or personal estate from her three grantors, and, if she be not then living, her estate will be entitled to reimbursement out of the proceeds of the required conversion in the several sums paid or advanced by her to Charles A. McCullars, Fannie McCullars Lyle, and J. H. McCullars. As to this, said grantors and their grantee have treated by their contract, receipt, or conveyance such interests in the real properties of testator as real property. As to them and their grantees and assigns, it will be governed by the well-recognized rules that obtain in this jurisdiction.

The later acquired equities or vested estates and expectancies such as were the subject of conveyance are frequently discussed by the court generally. Croxall v. Shererd, 5 Wall. 268, 18 L. Ed. 572; 26 R. C. L. p. 1264, § 112; 41 C. J. 374; 25 C. J. 171, "Expectant Heir"; "Assignments" 5 C. J. 852, 854, 856, § 16; Ann. Cas. 554; McKeigue v. Chicago & N. W. R. Co., 130 Wis. 543, 110 N. W. 384, 11 L. R. A. (N. S.) 148, 118 Am. St. Rep. 1038, 10 Ann. Cas. 554; 23 A. L. R. 824; 45 A. L. R. 66. It is established by this court that the holder of an equitable title to real estate (24 C. J. 374, § 161) may, to the extent of his interest, give a valid mortgage as deed of trust thereon. Wiswall v. Ross, 4 Port. 321; Christian v. Mortgage Co., 92 Ala. 130, 134, 9 So. 219. 221. In the last-cited case, Mr. Chief Justice Stone said, of conveyance by cestui que trust of a vested interest in trust estate, that, "before the mortgage was executed by John B. Christian, and before Mary C. Christian conveyed her interest to John B., * * * Each of them was then sui juris. They had, at least, a perfect equity in their several interests in the lands conveyed. What hindered that they should sell and transfer that interest? And what impediment does the court of chancery encounter in utilizing that interest in the payment of the debt it was pledged to secure?" This is in accord with the general authorities and our earlier cases.

The rules found in 5 C. J. 852, § 16, and note, page 854, § 17, and page 856, are as follows:

"The rule at common law does not permit the assignment or transfer of property not in existence and not in the actual or potential possession of the assignor at the time of the assignment, or the assignment of a mere possibility not founded on a right coupled with

an interest. Peugh v. Porter, 112 U. S. 737, 5 S. Ct. 361, 28 L. Ed. 859; Hendrie v. Sayles, 98 U. S. 546, 25 L. Ed. 176; Hammond v. Mason, etc., Organ Co., 92 U. S. 724, 23 L. Ed. 767; Hunter v. U. S., 5 Pet. 173, 8 L. Ed. 86; Mitchell v. Winslow, 17 Fed. Cas. No. 9,673, 2 Story, 630. Ala.–Hurst v. Bell, 72 Ala. 336; Skipper v. Stokes, 42 Ala. 255, 94 Am. Dec. 646, and note."

"In equity, by the great weight of authority, there can be a valid assignment of funds or property to be subsequently acquired, and of contingent and expectant interests. Thus a court of equity will uphold assignments of interests under a will, as of contingent bequests and legacies, to take effect on the happening of some future event, as the coming of age of the beneficiaries or the death of some other person."

"Equity does not hold that an assignment of or contract to sell that which does not exist operates as a present transfer, but construes it as operating by way of present contract to give a title which, as between the parties, takes effect and attaches to the subject as an equitable title or lien as soon as it comes into existence and possession, without the necessity of any new act."

 There was error in declining the relief sought by one phase of the cross-bill, as to the equitable interest, the result of the conveyance assigned by the three named children to Mrs. Cash, of their vested rights under the will of Mr. McCullars. The decree should ascertain the amount of the mortgage debt and declare a lien therefor upon the respective interests of Charles, Fannie, and Henry McCullars, conveyed or assigned to Mrs. McCullars, that will be paid out of the proceeds of the sale of said respective interests when such sale is and may be made at the time indicated in the will, and other appropriate provisions to that end. Appellees are taxed with the costs of the appeal.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.