BENJAMIN H. KELLER, and others *vs.* RICHARD K. HARPER, CHARLOTTE SNOOK, and DENNIS R. SNOOK, her husband.

*Conversion of Real Estate into Money—Equity rule—Direction to Sell land.*

The well established equity rule that land is to be considered as converted into money, even anterior to a sale, where a sale has been directed, applies only where there is an imperative and unequivocal direction to sell; and when the power to sell requires the consent of the parties interested, there is no conversion until such consent is given.

Where the sale is dependent upon a contingency, the transmutation does not take place until the contingency has happened.

J. K. died in 1850, leaving a will and codicil, which were duly admitted to probate. The testator by his will gave to his wife all of his estate for her life, or during her widowhood. He further declared, " my will further is, and I do hereby order and direct, that the whole of my estate, both real and personal, or the proceeds arising from the sale thereof, shall be equally divided amongst all of my children, or their heirs, share and share alike, excepting my unfortunate son Jacob, who I hereby give and bequeath two shares or parts of all my estate instead of one " * * *. He authorized his executors to sell during the life-time of the widow, with her consent, any part of the estate. He finally provided, " my will further is, and I do hereby order and direct, that after the death of my wife, or should she again marry, whichever event may first happen, and as soon thereafter as can be lawfully done, my executors, or a majority of them, shall sell and dispose of all my real estate not otherwise. disposed of, at public or private sale, as to them shall seem best, * * * * * * and the money or proceeds arising from such sale or sales shall form and be a part of my estate generally, for distribution amongst all of my children, or their heirs, according to the provisions contained in this my last will and testament." * * * * * The testator during his life had married twice. By the first marriage he had two children, and by the second, six. The children of the first marriage were daugh-

Keller, *et al. vs.* Harper, *et al.*

ters. One married James Harkey, and the other Richard Harper. The testator's wife survived him. Mrs. Harkey died intestate, and without issue in the year 1852 or 1853, and her husband died a few years later, and prior to the decease of the widow of the testator. Mrs. Harper died leaving as her heirs-at-law, two children, R. K. H. and C. S. The husband of Mrs. Harper also died. The widow of the testator died in January, 1880. After the death of Mrs. Harkey, some of the real estate was sold by the executors, with the assent of the widow, and after the death of the latter, the residue was sold by the administrator *de bonis non* with the will annexed. Upon a bill filed by the administrator to procure a proper construction of the will of the testator, it was HELD:

1st. That under the provisions of the will of J. K. his real estate was not converted into personalty from the date of his death, but retained its original character as to the part which was sold prior to the decease of the life-tenant, until the time of sale; and as to the residue sold after the death of the widow, until the time of her decease.

2nd. That Mrs. Harkey's share of the estate of her father J. K. vested in her as realty, and as such, passed, under section 19 of Article 47 of the Code, to her heirs-at-law, R. K. H. and C. S., the sole descendants of Mrs. Harper, her only sister of the whole blood.

APPEAL from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court.

The will of Jacob Keller contained, among others, the following provisions:

* * * I give, devise and bequeath unto my dear wife, Catharine, all my real and personal estate of which I may die seized and possessed of, the interest or income arising therefrom to be for her separate use and support, and to be at her own disposal as long as she lives and remains a widow: should she again marry, then I order and direct that the sum of one thousand dollars shall be put out at interest by my executors, and the interest arising therefrom to be paid to her annually by my said executors, or a ma-

jority of them; at the death of my said wife, the said sum of one thousand dollars is to form a part of my estate generally; should any part or all of a legacy given to my said wife by her father, come into my hands or estate, the same is not to form any part of my estate, but to vest in her my said wife, and her children or their issue; all of my aforesaid property is to be kept in good order and repair out of the proceeds of my estate.   *   *   *

  *   *   * I give, devise and bequeath to my daughter, Ann E., and her heirs, the frame house on the east side of the lot of ground next to Henry Frazier's house, with half of the lot of ground belonging thereto, and the right of a four foot passage or lane from the main inlet across.   *   *   *

[The testator devised to each of his seven other children, certain specified lots, pieces or parcels of his other real estate.  REP.]

My will further is, and I do hereby order and direct that the whole of my estate, both real and personal, or the proceeds arising from the sale or sales thereof, shall be equally divided amongst all of my children, or their heirs share and share alike, (excepting my unfortunate son Jacob,) who, I hereby give and bequeath two shares or parts of all my estate instead of one.   *   *   *

I authorize and empower any of my executors to purchase any part of my estate that they may think proper, and I also further authorize them, and empower them, or a majority of them, with the consent of my wife, to sell and dispose of any or all of my real estate, and to make and execute good and sufficient deed or deeds to the purchaser or purchasers of the same, and the money or proceeds arising from such sale or sales to be placed at interest for the benefit of my estate generally; all money or advances that I have made or shall hereafter make to any of my children shall be charged against them, and shall be a set-off for so much money advanced to them, or any of them,

in the share or portion of my estate to which they or any of them shall become entitled in a course of distribution, and no division or distribution of my estate shall take place until after the death of my wife, or unless she should again marry; in the event of the latter case, a distribution shall be made as soon as can lawfully be done; should any of my children refuse to take the property that I have willed them at such valuation as shall be put on the same by the persons appointed by the Orphans' Court to value the same, then such property is to form and belong to my estate generally.

My will further is, and I do hereby order and direct, that after the death of my wife, or should she again marry, whichever event may first happen, and as soon thereafter as can be lawfully done, my executors, or a majority of them, shall sell and dispose of all my real estate, not otherwise disposed of, at public or private sale, as to them shall seem best, and shall also make and execute to the purchaser or purchasers thereof, good and sufficient deeds for the same, and the money or proceeds arising from such sale or sales shall form and be a part of my estate generally, for distribution amongst all of my children, or their heirs, according to the provisions contained in this my last will and testament. * * *

The cause was argued before MILLER, YELLOTT, ROBIN-SON, and BRYAN, J.,

*James McSherry,* for the appellants.

By the provisions of the will of Jacob Keller the real estate was converted into personal estate, in accordance with the doctrine announced in *Fletcher vs. Ashburner,* 1 *Bro. C. C.,* 497, and ever since adhered to, to wit: "That money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which

they are directed to be converted; and this, in whatever manner the direction is given, whether by will, by way of contract or otherwise," &c. 1 *Leading Cases in Equity, part 1, top page* 593.

The general rule is that this conversion, when directed by will, is considered as taking place at the date of the testator's death. *Forsyth vs. Rathbone,* 34 *Barb.,* 388; *Stagg vs Jackson,* 1 *Comstock,* 206; *Cook vs. Cook,* 5 *Green (C. E.,) (N. J.,)* 375; *Arnold vs. Gilbert,* 5 *Barb.,* 190; *Haxtun vs. Corse,* 2 *Barb. Ch.,* 506; *Van Vechten vs. Van Veghten,* 8 *Paige,* 104; *De Peyster vs. Clendening,* 8 *Paige,* 295; *Brink vs. Layton,* 2 *Redf.,* 79; *Thomas vs. Wood,* 1 *Md. Ch. Dec.,* 298; *Hurtt vs. Fisher,* 1 *H. & G.,* 96.

If the conversion does not take place until after an actual sale, then the statement of the rule that land directed to be sold is *considered* as personalty, would be erroneous.

Where the conversion is imperatively directed, it is regarded as taking place at the time of the testator's death, although the *time* fixed by him for the sale for that purpose be distant. *Rinehart vs. Harrison,* 1 *Baldw. C. C.,* 177; *Fairly vs. Kline,* 2 *Penn., (N. J.,)* 754*; *High vs. Worley.* 33 *Ala.,* 196; *Hocker vs. Gentry,* 3 *Metc. (Ky.,)* 463; *Parkinson's Appeul,* 32 *Penn. St.,* 455.

A testatrix by her will devised lands to be sold, but directed that they should be leased for fifteen years, and ordered that no sale should take place till after that time. Held to be a conversion at the time of her death. *Roland vs. Miller,* 100 *Penn. St.,* 47; *Jones vs. Caldwell,* 97 *Penn.,* 42; 1 *Leading Cases in Eq., part 1, top pages* 613, 614; *Adams' Equity, star page* 136, *note* 1; *Hammond vs. Putnam,* 110 *Mass.,* 232.

The equitable doctrine of conversion is essentially a fiction, but the Court below held that there was no equitable conversion, because there was no conversion in fact

until the sale.   Whereas, equitable conversion only exists where there is none in fact.   The whole doctrine presupposes *no actual* conversion.

What did Jacob Keller intend that his children should take real or personal estate ?   If the latter, there was a conversion in equity into personalty, though the property in fact retained its distinctive form as real estate.   The whole context of the will shows, that what he intended them to have was personal estate.   He directs it to be sold for distribution ; and directs *all* of it to be sold, and declares that the proceeds of such sales shall be part of his estate generally "for distribution amongst all of my children or their heirs, according to the provisions contained in this my last will and testament."

There is not a single contingency upon the happening of which no sale is to take place.   The sale is not made to depend on the assent of any one.   A sale is inevitable. The provisions directing it are imperative.   Contingencies which affect a question like this, are contingencies as to whether or not *in fact* a sale shall take place, and not contingencies as to the mere *time* of sale.   If the sale is or is not to take place as a particular event may or may not happen, no conversion takes place until the happening of the event and a sale accordingly.   But where a sale is *inevitable* to carry out the will, and the *time* of sale is contingent, the conversion takes place upon the death of the testator, in the contemplation of a Court of equity.   The scheme and purpose of the will can *only* be effected by a conversion into personalty.   *Freeman vs. Smith, et al.,* 60 *Howard (N. Y.) Pr.,* 311.

As therefore he intended that his children should receive personal estate, and accordingly directed his real estate to be sold for that purpose, and provided that such a sale must of necessity take place before a distribution could be made, the whole estate became at the testator's death, in a Court of equity, personal estate, subject to the

laws regulating the distribution of personalty, though it retained the form of and remained in fact real estate. Hence, Mrs. Harkey's share was a *chose in action.* "It was a present debt of an unascertained amount payable at a future day,"—"a species of *chose in action.*" *Neale vs. Hagthrop,* 3 *Bl.,* 551 ; *Hagthorp vs. Hook,* 1 *G. & J.,* 270–276.

The interest of Mrs. Harkey survived to the husband at common law, *if reduced into possession by him in his lifetime. Williams on Personal Property,* star page 294 ; *Hammond, et al. vs. Stier,* 2 *G. & J.,* 81–85 ; *Hurtt vs. Fisher,* 1 *H. & G.,* 96.

Notes, bonds, &c., of the wife devolve upon the husband *juri mariti,* but if he does not reduce them *during his life,* they go to the representatives of the wife for the benefit of *her* distributees. *Crane vs. Gough,* 4 *Md.,* 316 *Taggart vs. Bolden & Thayer,* 10 *Md.,* 104.

Mr. Harkey failed to reduce this share of his wife's into possession in his life-time, and she having died without ever having had issue, and intestate, it goes to *her,* and not to his, personal representatives. Section 2 of Article 45, of the Code was not passed till 1860. Section 32 of Article 93, was the Act of 1798, ch. 101. sub-ch. 5, sec. 8. *Leadenham vs. Nicholson,* 1 *H. & G.,* 267 ; *Stockett vs. Bird,* 18 *Md.,* 484; *Hubbard and Wife vs. Barcus,* 38 *Md.,* 177.

Hence, being personal estate, there is no distinction between the whole and the half blood, and the funds properly go to the children and their descendants of both wives. *Code, Art.* 93, *sec.* 131; *Seekamp's Adm'r vs. Hammer, et ux.,* 2 *H. & G.,* 9.

*Milton G. Urner,* for the appellees.

YELLOTT, J., delivered the opinion of the Court.

In the Circuit Court for Frederick County, sitting in equity, a bill of complaint was filed by Charles V. S. Levy,

administrator *de bonis non cum testamento annexo*, of Jacob Keller, deceased, for the purpose of obtaining a judicial construction of the will of said decedent, who departed this life in the year eighteen hundred and fifty, after having made a testamentary disposition of his property by will and codicil, which were duly admitted to probate by the Orphans' Court of said county. During his life the testator had contracted two marriages. He had two children by the first marriage and six by the second. The children of the first marriage were both daughters, one of whom, Ann E., married James Harkey, and the other, Richard Harper. The testator's second wife survived him. His daughter, Mrs. Harkey, died intestate and without issue in the year 1852 or 1853, and her husband died a few years afterwards, and prior to the decease of the widow of the testator. Mrs. Harper died, leaving two children, Richard K. Harper and Charlotte Snook, who are her heirs-at-law. The husband of Mrs. Harper is now deceased.

As Mrs. Harkey died intestate and without issue, her sister of the whole blood would inherit any real estate belonging to her which she had acquired by purchase and would transmit it by descent, to her heirs-at-law, by dying intestate. The proceeds from the sale of the real estate of Jacob Keller, whether sold during the life-time of his widow, or since her death, have been distributed in the Orphans' Court of Frederick County, and paid out, except that portion assigned by such distribution to the heirs of Mrs. Harkey. The question now to be determined is, who are the heirs of Mrs. Harkey ? If by the operation of the terms of the testator's will, his real estate, although not sold until many years after his death, underwent a transmutation and was converted into personalty, there could be no distinction between the whole and the half blood, who would be entitled to share equally in the distribution. If, on the other hand, the real estate was not, in conformity with the

principles of equitable conversion, transformed into personalty anterior to an actual sale, then the heirs-at-law of Mrs. Harper, the sister of the whole blood, would be entitled to the distributive share of Mrs. Harkey, who had died intestate and without issue. *Art.* 93, *sec.* 131 of the Code.

The appellees, as the descendants of a sister of the whole blood, claim to the exclusion of the children or descendants of the children of the testator's second wife, on the ground that the will did not so operate as to cause a transmutation or conversion of the realty into personalty prior to the period when the property was sold.

By a fundamental principle in equity, long established and universally recognized, land is considered as converted into money even anterior to a sale when a sale has been directed ; and Courts of equity will deal with such real estate as personalty in anticipation of the consummation of the testator's intention when such intention has been unequivocally declared. There must, however, be an imperative and unequivocal direction to sell the real estate, and when the power to sell requires the consent of the parties interested, there is no conversion until such consent is given. And when the sale is dependent upon a contingency, there is no transmutation until the contingency has happened. As said by Lord CRANWORTH, Chancellor, "We must consider the property as converted from the time when it ought to have been converted." *Ferrie vs. Atherton,* 28 *Eng. Law and Equity Rep.,* 1. And another important rule is that as Courts are averse to sanctioning a change in the quality of an estate, if there is any doubt as to the intention of the testator, the original character of the property will be retained. "The basis of all the decisions is that the intent of the testator is the great guide in determining the question whether there has been an equitable conversion of the realty into personalty." *Orrick, et al. vs. Boehm, et al.,* 49 *Md.,* 104 ; *Lynn vs. Gephardt,*

27 *Md.*, 563 ; *Hunt vs. Fisher,* 1 *H. & G.*, 96 ; *Leadenham vs. Nicholson,* 1 *H. & G.*, 267 ; *Thomas vs. Wood,* 1 *Md. Ch. Dec.,* 297 ; *Carr vs. Ireland,* 4 *Md. Ch. Dec.,* 251; *Craig vs. Leslie,* 3 *Wheaton,* 564 ; *Peter vs. Beverly,* 10 *Peters,* 533.

The learned Judges in the Circuit Court, in a very able and lucid application of the principles established by the authorities cited say :

" The order or direction in this will, for the conversion of the land into money, cannot be said to be ' absolute and imperative ' in the sense in which those terms are used by the Courts and by the text writers on the subject. First, the executors must sell if the widow marries ; next, they may sell with the widow's consent; then they shall sell all the estate, if the specific devisees refuse to take ; and at her death the executors must sell all that had not been previously sold. And the different provisions of the will are put together in such a confused manner, and the time when, and the conditions or contingencies upon which the sale or sales may or must be made, are so uncertain, that the Court must have great doubt that the conversion operated from the death of the testator, and must therefore conclude that as to the property which was sold prior to the decease of the life tenant, the conversion took place at the time of sale, and as to the property sold after the death of the widow, the conversion was at the time of her decease. In other words, the intention to turn the land into money prior to the sale or decease of the widow, not so clearly appearing as is required in *Lynn vs. Gephardt* the property retained its original character as just stated, there being no equity between the heirs and next of kin. Mrs. Harkey having died shortly after her father, and before the death of her stepmother, and before the time within which she could elect to take the house and lot devised to her, and before any of the property was sold, and as it still retained its character as land, her share in the estate vested

in her as realty. And, as she took an interest different in quality and quantity under her father's will, from. what she would have taken by descent she took by purchase." *Gilpin vs. Hollingsworth,* 3 *Md.,* 190.

The language of the Circuit Court has been transcribed and adopted because it is apparently impossible to furnish a clearer exposition and application of the principles governing and controlling this controversy. And the final conclusion of the Court is equally correct when it says :

"Upon the facts alleged in these proceedings and admitted by the parties who have appeared, that Mrs. Harkey died intestate and without issue, and her husband is now dead, her interest under the Code, *Art.* 47, *sec.* 19, passed as real estate to her heirs-at-law, who are Richard K. Harper and Charlotte Snook, the only descendants of Sophia Harper, her only sister of the whole blood."

There being no error in the ruling of the Circuit Court, its decree must be affirmed ; but as a judicial construction of the will was rendered necessary by its peculiar phraseology, the costs must be paid out of the fund held by the administrator *de bonis non* for distribution.

*Decree affirmcd.*

(Decided 24th June, 1885.)