# Allen *v.* Watts, Ex'r.

*Bill in Equity by Executor Praying the Assistance of the Chancery Court in Distributing the Funds in his Hands Belonging to the Estate.*

1. *Vested interest under a will.*—Where a will provides that real estate is to be held and enjoyed by the wife of the testator, during her life, and at her death to be sold and the proceeds of sale to be equally divided between the children, the rights of the children become vested at the death of the testator.

2. *Same; equitable doctrine of conversion.*—Such provision presents a case for the application of the equitable doctrine of conversion, and for its purpose in behalf of the children, the land directed to be sold and turned into money, is to be considered as money, and may be disposed of by them, by will, as such, before the termination of the life estate of the mother, since, in equity, property is treated as being already, what it was determined to become.

3. *Testamentary gift of money to be realized from sale of land.*—A testamentary gift of money which is to·be realized from the sale of land, is, throughout, a legacy of money, because it was the intention of the testator to give money, and not land.

4. *Conversion; when it becomes operative.*—The fiction of conversion becomes operative from the time the testator fixes the direction in which the land shall go, and not from the time when the land is to be actually sold and the proceeds applied to the legacy; hence, the interest of the legatee in the land must, in equity, be treated as an interest in money from the time the legacy becomes a vested interest in the legatee.

5. *Conversion may be of only a remainder in land.*—Where the intention of the testator is that only the remainder in land, after a particular estate, is to be sold and converted into money, it is only upon such remainder that the character of personal property is impressed.

[Allen v. Watts, Ex'r.]

6. *Sale upon future contingency; when conversion becomes operative.*— If the sale provided for in the will is, or is not, to take place, as a particular event may, or may not, happen; or, is made to depend upon the will or discretion of the executor or trustee, the conversion will not be consummated in law until the prescribed event happens, or until the executor or trustee exercises the power to sell.

APPEAL from the City Court of Montgomery.

Heard before the Hon. THOS. N. ARRINGTON.

The bill in this case was filed March the 12th, 1892, in the City Court of Montgomery, sitting in equity, by Thos. H. Watts, as executor of Wade Allen's last will. It averred that on the 21st of June, 1851, Wade Allen, a resident of Montgomery county, State of Alabama, died, siezed of an estate consisting of real and personal property, and having appointed the complainant executor, and Eliza Allen, wife of the testator, executrix, of his said will. Complainant alone qualified, and took out letters testamentary on the 25th day of June, 1851; that by the terms of said will, the testator devised to his wife the house and lot on Court street, in the city of Montgomery, on which he resided at his death, for the term of her life, and at her death, to be sold, and the proceeds of said sale to be equally divided among all his children, viz: W. W. Allen, Wade H. Allen, George E. Allen, J. V. Allen, Ann McBryde, wife of Andrew McBryde, and Eliza B. Watts, wife of Thos. H. Watts; that the said Wade H. Allen, before he had arrived at the age of twenty-one years, but after he had arrived at the age of eighteen, viz., on the 5th of January, 1857, made his will, by which he disposed of all his estate of whatever character, to his mother, Eliza Allen, and to his brothers, William W., George E. and Joseph V. Allen, in equal portions. That said Joseph V. Allen died before he arrived of age, intestate. That the said Eliza Allen, wife of the testator, Wade Allen, died in January, 1892; that since her death, the complainant, acting under the authority of the last will of said Wade Allen, had sold the house and lot, given to said Eliza Allen for her life, by said will, and, before making final distribution of the proceeds thereof, sought the assistance of the Chancery Court to determine, whether the interest of said Wade H. Allen, son of the testator, had become vested under the will of his father, in the house and lot, in which a life estate was given to Eliza Allen, and, whether the will of Wade H. Allen was valid and effective to pass to the legatees named therein, his said interest. In fine, whether such interest was to be regarded as realty, or, by the equitable doctrine of conversion, to be treated as personal property. The Chancery Court decreed that the

[Allen v. Watts, Ex'r.]

interest of said Wade H. Allen in said premises became, and was, in equity, a vested interest in personalty from and after the death of said Wade Allen, and that said interest passed by the will of Wade H. Allen to the legatees of the latter. From that decree this appeal is taken to this court.

A. D. SAYRE and W. W. PEARSON, for the Allens, appellants. 1. Conversion, when effected by will, relates, in time, to the death of the testator.—2 Jar. Will, 179 ; *Fletch v. Ashburner*, 1 Bro. Ch. Cas. 497 ; *Cropley v. Cooper*, 19 Wall. 167 ; *Fisher v. Banta*, 66 N. Y. 476 ; *Fairly v. Kline*, Penn. (N. J.) 551 ; *Hocker v. Gentry*, 3 Metc. (Ky.) 473 ; Wright's Appeal, 100 Pa. 607 ; *Reading v. Blackwell*, Bald. 156 ; *High v. Worley*, 33 Ala. 193. 2. *Massey v. Modawell*, 73 Ala., *Savage v. Burnham*, 17 N. Y., and *Harcum v. Hudnall*, 14 Grat. illustrate a limitation of the general doctrine of conversion, which is as follows : Conversion does not take place as to persons whose claims to the property are incidental ; and, conversion operates only so far as may be necessary to carry out the purpose of the testator. -3 Pom. Eq. § 1166. They are not in point, and do not affect the claim of the Allens. 3. The rule as to when conversion takes place under a will differs from the rule in the case of a deed.—3 Pom. Eq. § 1162. 4. The rule that the notional conversion takes place only at the time when it is directed to be actually made, obtains only where the event, upon the happening of which the actual conversion is to be made, is uncertain. Where the event is certain, as for instance, the death of a life tenant, the conversion takes place in the case of a will from the death of the testator.—3 Pom. § 1162 ; 2 Jar. Wills, 179, note 3.

TOMPKINS & TROY, for the other appellants, cited 2 Jarman Wills, 179 and notes ; 3 Pom. Eq. § 1162 ; 1 Brown's Chan. C. 497 ; *Cropley v. Cooper*, 19 Wall. 167 ; *Craig v. Leslie*, 3 Wheaton, 563 ; *Fisher v. Banta*, 66 N. Y. 467 ; *Fairly v. Kline*, Pennington's N. J. Rep. 551 ; Wright's Appeal, 100 Pa. St. 607 ; *Hocker v. Gentry*, 3 Met. (Ky.) Rep. 473 ; *Reading v. Blackwell*, Bald. 156 ; *High v. Worley*, 33 Ala. 196 ; *Massey v. Modawell*, 73 Ala. ; *Savage v. Burnham*, 17 N. Y. 569 ; 14 Grat. 369 ; 28 Eng. L. & Eq. Rep. 1.

WATTS & SON, for appellee. (No brief.)

WALKER, J.—The question in this case is, whether the will of Wade H. Allen was effectual to pass his interest under

the codicil to the will of his father, Wade Allen. Wade H. Allen executed his will on the 5th day of January, 1857, when he was more than eighteen, but less than twenty-one years of age. If his interest in question was personal property it passed by his will, as all persons over the age of eighteen years, of sound mind, could then, as they can now, by their last will, dispose of all their personal property.— Code of 1852, § 1595 ; Code of 1886, § 1951. If that interest was real property it did not pass by the will, as the law was at that time, as it is now, that only persons of the age of twenty-one years, of sound mind, may devise, by last will, lands, tenements or hereditaments, or any interest therein. Code of 1852, § 1589 ; Code of 1886, § 1945.

By the codicil to the will of Wade Allen, who died in 1851, he gave and bequeathed to his wife, Eliza Allen, his residence and the lot on which it was situated, in the city of Montgomery, "to be held, used and enjoyed by her during the term of her natural life, and at her death to be sold and the proceeds of said sale equally divided between all my children named in the will, to-wit, &c. ; Wade H. Allen was one of the children named in this provision. The executors were empowered and enjoined to carry out the provisions of this codicil. The widow of Wade Allen died in January, 1892, more than thirty years after the death of Wade H. Allen.

The provision made by the codicil for the children was certain, not dependent upon the happening or not happening of any future event; only the time of enjoyment was postponed. It is not denied that their several interests were vested, and not contingent.—*Higgins v. Waller*, 57 Ala. 396 ; *Foster v. Holland*, 56 Ala. 474 ; *High v. Worley*, 32 Ala. 709 ; *Tazewell v. Smith*, 1 Rand. 313 ; s. c. 10 Am. Dec. 533.

Nor is it denied that the codicil presents a case for the application of the equitable doctrine of conversion. For the purposes of the provision in behalf of the children the land directed to be sold and turned into money is to be considered as money. The contention of the appellants is, that the testator gave his wife a life estate in the land, and authorized a sale of it only after her death, he clearly manifested an intention that it should remain and be considered and treated as real estate so long as she might live ; that the intention of the testator is to prevail, and that, therefore, the land can not be considered and treated as personal property during the period when, according to the express directions of the testator, it was to be held, used and enjoyed as land. It is insisted that the testator postponed the date of

the conversion until after the expiration of the life estate given to the wife.

Mr. Pomeroy says: "Conversion has been briefly and accurately defined as that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendible as such."—3 Pomeroy Eq. Jur., § 1159.   In the note to *Ford v. Ford*, 5 Am. St. Rep., 117–141, it is said: "It is so well established as to be at this time beyond controversy that an estate will be considered as of that kind of property into which it is directed to be converted; that is, a direction in a will to convert realty into money operates as an equitable conversion, and the realty is thereafter to be deemed personalty in equity; and money directed to be converted into land, in equity, considered as such for all intents and purposes, and passes therefore by devise, and descends to the heirs."   The doctrine of conversion is an application of the maxim that equity regards that as done which ought to be done.   The purpose at the foundation of the doctrine is to give effect to the intention disclosed in the will, deed, or contract, as the case may be.   If from the terms of the provision in question an intention is manifested that the original form of the property shall be changed and that the beneficiary is to have the property in another form, equity proceeds upon the theory that the change has already been made, and considers the beneficiary as entitled from the beginning to that kind of property which will remain when the change shall have been actually made.   The practical questions growing out of the operation of the doctrine are generally presented in controversies in reference to the devolution of the interest of the original beneficiary, as where that interest is claimed by his heirs, or by his distributees, or by his personal representatives, or by the holders of demands sought to be enforced against it, or under transfers from the beneficiary himself.   The result of such controversies frequently depends, as in the present case, upon whether the interest is to be regarded as real or personal property.   As in equity, by the operation of the doctrine under consideration, property is treated as being already what it was intended to become, the character of the interest acquired by the beneficiary is to be determined by the kind of property which he is to receive, though the source from which it is to be obtained is another kind of property.   If he is to receive money or other personal property, though land which is particularly described and designated for this purpose must be sold to obtain that which is to come to him, his interest is in the money

[Allen v. Watts, Ex'r.]

or other personal property, and not an interest in the land. If he is to receive land, though the land remains to be acquired and a specified fund or other personal property is set apart to be used for that purpose, his equitable claim is to land, and not to the personal property so used in its acquisition.—3 Pomeroy's Eq. Jur., § 1159 *et seq.*

A testamentary gift of money which is to be realized from the sale of land is, throughout, a legacy of money, because it was the intention of the testator to give money and not land. It is by indulging the presumption that the original form of the property has already been changed, when there has been no change in fact, that the transaction can be considered as one entirely in reference to that kind of property which the beneficiary is to receive. Equity gives to the act of the testator in setting apart the land and directing it to be converted into money the effect of stamping upon it the qualities of money, so that the interest in it of the person to whom the money is to be paid will accrue to him as an interest in money, and may pass as money, though the land has not been actually converted into money. In other words, the land is considered as money so far as this is necessary to give effect to the provision as a legacy of money and to treat the interest of the legatee as altogether an interest in money. It being the act of the testator which imparts to the land the qualities of money for all the purposes of the provision in question, it would seem that such quantum of interest or estate in the land as must follow the direction given to it by the testator takes on the qualities of money from the time when the direction which it is to take is fixed and determined. As it is the command of the testator which works the conversion, the land becomes money, in the view of equity, when the provision for the appropriation of the proceeds of its sale, is made. It is not the actual appropriation of the proceeds of the sale, but the direction or provision that such appropriation shall be made, that supports the fiction of a conversion. When the fact that the land must be sold and the proceeds of its sale paid to the beneficiary is definitely and finally settled, equity regards the change in the form of the property as already consummated. If the fiction of a conversion becomes operative from the time the testator fixes the direction in which the land shall go, and not from the time when the land is to be actually sold and the proceeds of its sale applied on the legacy, it follows that the interest of the legatee in the land must in equity be treated as an interest in money from the time the legacy becomes a vested interest in the legatee. In *Cropley v. Cooper*, 19 Wal.

167, a case involving substantially the same question as the one now under consideration, it was said: "The real estate having been directed by the will to be converted into money, it is to be regarded for all the purposes of this case as if it were money at the time of the death of the testator. That it was not to be sold until after the termination of two successive life estates does not affect the application of the principle. Equity regards substance and not form, and considers that as done which is required to be done. The sale being directed absolutely, the time is immaterial. The proposition here announced is supported by many authorities. *Reading v. Blackwell,* 1 Baldwin, 166; *Rinehart v. Harrison, Ib.* 177; *Fairly v. Kline,* 3 N. J. Law, 322; *Wurts v. Page,* 19 N. J. Eq. 365; *Hocker v. Gentry,* 3 Met. (Ky.) 463; *Tazewell v. Smith,* 1 Rand. 313; s. c. 10 Am. Dec. 533; *Bright's Appeal,* 100 Pa. St. 602; *Jones v. Caldwell,* 97 Pa. St. 42; *Parkinson's Appeal,* 32 Aa. St. 455; *Loftis v. Glass,* 15 Ark. 680; *Dodge v. Williams,* 46 Wis. 70; 3 Pomeroy Eq. Jur. § 1162; 6 Am. & Eng. Encyc. of Law, 670. There are cases opposed to this view. See 3 Jarman on Wills (Randolph & T.'s Ed.) 179, note 3. That the proper application of the principle works the result above stated in a case like the present one seems to have been recognized by this court in the case of *High v. Worley,* 33 Ala. 197. By the will under consideration in that case the testator directed that the land in controversy should be retained by the executor, for the use and support of his wife and children, until his daughter Fanny Ann attained the age of sixteen years; that it should then be sold, and that the proceeds of sale should be equally divided between his wife and children, share and share alike. The land was considered as money, as it did not appear that it had been reconverted into realty by the election of all the beneficiaries to take the land itself. The court said: "The postponement of the sale, to the time of the daughter's becoming sixteen years of age, does not prevent the operation of the principle." As it appeared that the daughter had been married, and the case was in this court twenty-eight years after the death of the testator, it may be supposed that when the bill was filed the time had already passed when the actual sale and division should have been made. The case does not clearly show that the court regarded the equitable conversion as having taken effect from the date of the testator's death. That such, however, was the view of the court is indicated by the cases which were cited in support of the proposition above quoted. The only cases cited in that connection are the two reported in 1 Baldwin, which

fully sustain the proposition in support of which they have already been cited in this opinion.

The appellants contend that the decision in the later case of *Massey v. Modawell*, 73 Ala. 421, settles the proposition that when land is directed to be sold and converted into money at some future time there is no equitable conversion until the arrival of the time when the sale and conversion should actually take place. This contention finds apparent support in some of the expressions used in the opinion in that case. But the decision itself can not be regarded as establishing the doctrine contended for. The right of complainants in that case to maintain their bill was denied on several separate and distinct grounds. The complainants sought to support their right to sue in equity for the recovery of the land on the ground that by the provision of the will which disposed of it it was to be converted into money. That will directed that when the testator's youngest child became of age or married, the entire property was to be sold and converted into money. One of the complainants who was a son of the testator was a minor at the time the bill was filed, and it did not appear that he was then married. The time had not arrived when a valid sale could be made under the power and direction in the will. But the executor had attempted to make a sale, without any decree or order purporting to give him authority to do so; and the land was then held under this void sale. It was properly held that the conversion provided for by the will had not then taken effect so as to give the beneficiaries the right to sue in equity for the recovery of the land as money. The doctrine of equitable conversion could operate only upon such estate in the land as was designated or set apart by the testator to be converted into money. In that case, the direction in the will was in effect for the sale and conversion of the remainder in the land which would be left after the term which would expire when the youngest child attained majority or married. The term extending to that date was not within the influence of the testator's direction to convert, and was not disposed of by the provision on that subject. That term was still running and the persons entitled to it were entitled to recover the possession of the land from a wrongful holder. The title was in the heirs by descent. In their characters as the legal holders of that term they were entitled to the possession of the land as land, and could sue at law to recover possession. The right of the legal holder of that term was a right to hold and possess the land as realty, with all the rights and incidents which attach to land.

The complainants could not then sue in equity to recover the land as money, because they were not then entitled to take it as money. The term, the legal ownership of which gave the right of present possession, was never intended by the testator to be converted. It was proper to hold that a provision for the conversion of the remainder only could not operate to work a conversion of the intermediate term also. Referring the expressions in the opinion to the matter then in hand, the court is to be understood as asserting that a conversion of the entire estate in the land could not and did not take effect while a term was outstanding which was not within the influence of the direction to convert. When land is directed to be sold and converted into money, it is not necessarily the whole estate in the land that is in equity to be treated as money. The fiction of a conversion is to be indulged only so far as this is necessary to give effect to the intention of the testator to make the gift one of money. If only a remainder in land after a particular estate, is to be sold and converted into money, it is only upon such remainder that the character of personal property is stamped. There is no incompatibility in the existence at the same time of a particular legal estate in land over which a court of equity can exercise no control whatever, and an independent right to have the remainder interest in the same land converted into money, so that a court of equity may treat that interest as money. In such case the holder of the particular estate must be treated everywhere and for all purposes as the owner of a legal interest in land as such. The equitable doctrine of conversion is to be invoked merely to determine the character of the interest in that estate in the land which is to be converted. The conclusion that the interest of the children in the remainder, which alone was directed to be sold and converted into money, was not in equity an interest in money, and transferrable and descendible as such, from the date of the death of the testator, was not involved in the decision of *Massey v. Modawell*. Only their equitable right to the present possession of the land was denied. *Savage v. Burnham*, 17 N. Y. 561, is another case principally relied on in the argument for the appellants. By the will then before the court the testator had devised all his real and personal estate to trustees, upon trust to hold during the life of the widow and apply the rents and profits as directed, and at her death to sell the real estate and apply the proceeds to a fund, for the distribution of which among the testator's children and grand children provision was made. It was held that during the life of the widow the trustees

held the land as land. This was manifestly proper. In determining the character of the estate of the trustees in the land during the life of the widow, the court by no means asserted that the interests of the children and grand children in the remainder were not to be regarded as interests in personal property from the date of the testator's death. That question was not involved. The trustee could hold the land as land so far as the life estate was concerned, while as to the remainder, the land would be regarded as personalty, because only the remainder was within the influence of the direction to convert.

It is fully recognized by the authorities that equity does not regard the conversion as taking effect from the date of the testator's death unless there is an imperative and unequivocal direction, express or clearly implied, to sell and convert, so that a sale is inevitable to carry out the will. If the sale is or is not to take place as a particular event may or may not happen, or is made to depend upon the will or discretion of the executor or trustee, the conversion will not be consummated in law until the prescribed event happens, or until the executor or trustee exercises the power to sell, as the case may be; and in such case the conversion in fact does not necessarily result from the execution of the command of the testator, but is dependent upon the happening of the prescribed event, or the exercise by the executor, or trustee of the power vested in him to change the form of the property. There is no notional conversion until it is settled that the original form of the property shall be changed. If the testator does not himself settle that fact, but leaves it to be settled in the future in a manner prescribed by him, there is no room for the operation of the fiction of a conversion until the direction the property is to take is fixed. Equity does not consider a thing as done until it is determined that it ought to be done.—*King v. King*, 13 R. I. 501; *Keller v. Harper*, 64 Md. 74; *Parker v. Glover*, 42 N. J. Eq. 559; *Haward v. Peavey*, 128 Ill. 430; s. c. 15 Am. St. Rep. 120; *Ford v. Ford*, 70 Wis. 19; s. c. 5 Am. St. Rep. 117. The following is Mr. Pomeroy's statement of the rule as to the time from which the conversion takes place: "The instrument might in express terms contain an absolute direction to sell or to purchase at some specified time; and if it created a trust to sell upon the happening of a specified event, which might or might not happen, then the conversion would only take place from the time of the happening of that event, but would take place when the event happened exactly as though there had been an absolute direction to sell at that time.

Subject to this general modification, the rule is settled that a conversion takes place in wills as from the death of the testator, and in deeds, and other instruments *inter vivos*, as from the date of their execution."—3 Pomeroy Eq. Jur., § 1162:

Our conclusion from the authorities, and from a consideration of the reasons which support the equitable doctrine of conversion, is that that interest or estate in the land which the will requires, absolutely and without contingency, shall be sold and converted into money which is to be paid to certain beneficiaries, is, for the purposes of that provision, to be considered as money from the date of the testator's death.   It is as if the testator had taken that interest or estate in the land within his grasp and transformed it under his own hand into another kind of property.   It is none the less a gift of personal property from the beginning because there is a postponement of the time when the legatees can come into the enjoyment of the legacies.   A contingency as to the time when the actual change in the form of the property shall take place, does not lessen the effect of the act of the testator in making the land money by directing the appropriation of the proceeds of its sale to the satisfaction of a gift of money.   If the testator is the owner in fee of the land, he may carve out any interest or estate he pleases and direct that alone to be sold and the proceeds applied on a legacy.   As to the remaining interest or estate in the land, to which the testator does not undertake to impart the qualities of money, the land continues land with all the incidents which attach to such estate at law.

The result in this case is, that though the testator's widow had a life estate, and so long as she lived, held, used and enjoyed the land as such, yet, for the purposes of the provision made for the children, the remainder, after such life estate, is to be considered in equity as money from the date of the testator's death.   Wade H. Allen's interest in such remainder is to be treated as a vested interest in personal property.   It follows that that interest passed by his will. The City Court so held and decreed accordingly.   Its decree must, therefore, be affirmed.

Affirmed.