In the Matter of the Application of RALPH L. FULTON for the Revocation of Letters Testamentary Issued to LANOMA L. MOORE, as Executrix, etc., of ARLINGTON P. FULTON, Deceased.

RALPH L. FULTON, Petitioner, Appellant; LANOMA L. MOORE, as Executrix, etc., of ARLINGTON P. FULTON, Deceased, and Others, Respondents.

Third Department, March 16, 1938.

*Edward F. Ryan,* for the appellant.

*William H. Holmes* [*John D. Lyons* of counsel], for the executrix-respondent.

BLISS, J.   The respondent Lanoma L. Moore is the executrix of the last will and testament of Arlington P. Fulton, late of the county of Sullivan, deceased.   The will directed her to sell the real estate in question here as soon after death as she could reasonably and prudently do so and the proceeds were to be divided equally among the three children of the decedent, Lanoma L. Moore, the executrix, Maude E. Orr and the appellant, Ralph Fulton.   Shortly after the issue of the letters testamentary the executrix conveyed to her husband, the respondent Fred Moore, certain real estate under this power of sale.   The consideration for the transfer was $500.   By petition in Surrogate's Court the appellant, Ralph Fulton, sought a decree revoking the letters testamentary upon the ground that the consideration for the conveyance was far less than the actual value of the lands thus sold.   Cotemporaneously an action in the Supreme Court was brought by the appellant to have the conveyance declared null and void on account of fraud.   The parties then stipulated that all questions at issue between the parties, either in the Supreme Court or in the Surrogate's Court, should be heard and decided by the Surrogate's Court.   After a trial the special surrogate found that the executrix had acted in good faith and without fraud or collusion in making the sale of the real estate to her husband and that the sum of $500 obtained by her from such sale was a fair and reasonable price for the premises.   He confirmed the sale as a valid execution of the power contained in the will and dismissed the proceeding with costs against the appellant personally.   Upon the trial much testimony was taken and time spent in an effort to ascertain whether $500 was a fair price for the property.   In our view of the case we need not go into the question of the price obtained or the nature and extent of the premises sold.   A brief discussion of the law relating to the right of the trustee to convey trust property to her husband is all that is required.

A trustee's first duty is to his trust.   It is elemental that he cannot transfer trust property to himself individually.   We see little if any difference in a trustee conveying trust property to her husband.   Such a sale at once raises a doubt as to its validity and is presumed to be a violation of the trust.   While it may not actually have been a fraudulent transaction, only the fullest and fairest disclosure of all the facts will establish that.   A conflict of interests exists.   The mere showing of the relationship raises the presumption and gives the beneficiary of the trust the right to have the transfer set aside. The courts have said that this was to avoid the opportunity for actual fraud and its easy concealment by a trustee and that such sales should be avoided as a matter of public policy.   In principle,

such a transfer is constructively fraudulent and may be canceled at the beneficiary's option.

"The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." (Restatement of the Law of Trusts, § 170, subsection [1].) In the comment on this subsection it is stated: "A trustee with power to sell trust property is under a duty not to sell to himself either by private sale or at auction, whether the property has a market price or not, and whether or not the trustee makes a profit thereby. It is immaterial that the trustee acts in good faith in purchasing trust property for himself, and that he pays a fair consideration * * *.

"If the third person is the spouse of the trustee, the sale can be set aside as though it were made to the trustee himself."

This rule that a beneficiary may at his option have set aside a conveyance of trust property by a trustee to her husband without showing more, is quite universal. "The rule forbidding a trustee to purchase from himself at his own sale extends with equal force to the purchase of trust property by the husband or wife of a trustee of that property." (65 C. J. 775.) "Where a husband sells as trustee, his wife is excluded from purchasing at the sale directly from him" (26 R. C. L. Trusts, § 192) and the *cestui que trust* may insist, as a matter of right, upon having the sale set aside. * * * A *cestui que trust* may disaffirm the sale and have it set aside whether it be *bona fide* or not, and action by the court is not dependent upon the proof of actual injury, for the court acts in such cases not so much to protect the particular *cestui que trust* as to uphold and enforce the sound principle of public policy." (Id. § 195.)

In our own jurisdiction it was held in *Davoue* v. *Fanning* (2 Johns. Ch. 252) that a beneficiary was entitled to have a sale of trust property set aside where an executor by a previous arrangement allowed the property to be purchased in for his wife and executed a deed of sale in trust for her. It was stated that under any other holding the temptation to abuse the trust would be great and dangerous and that this temptation to abuse was nearly the same whether a trustee bought in for himself or his wife. His interest interfered with his duty. This case has been universally followed although it was decided before the Married Women's Acts took effect. (See *Gardner* v. *Ogden*, 22 N. Y. 327; *Forbes* v. *Halsey*, 26 id. 53; *Terwilliger* v. *Brown*, 44 id. 237; *Lingke* v. *Wilkinson*, 57 id. 445; *Seymour* v. *Seymour*, 120 Misc. 525.) This is also the rule in many other American jurisdictions. Appellant's action, made seasonally, to avoid this conveyance should have been

granted. Much of the testimony taken upon the trial as to the good faith of the executrix and the extent and value of the premises conveyed was immaterial. The decree in so far as it found the sale to be valid and denied the application to set it aside, is erroneous.

The only remaining question is whether a revocation of the letters testamentary should follow. After the sale of this real estate to him the respondent Moore cut some timber on the lands in question. There has thus been a loss to the estate. Also, the executrix and her husband have persisted in their misapplication of the property of the estate and their misconduct to the extent of refusing reconveyance of the lands in question and compelling the appellant to institute these two proceedings and prosecute this appeal. We believe that all of these acts when taken together constitute sufficient grounds for the revocation of the letters testamentary and that the best interest of the estate will be promoted by such action. (Surr. Ct. Act, § 99.)

The decree appealed from should, therefore, be reversed, with one bill of costs, as in an action, in this court and in the court below, in favor of the appellant against the respondent individually and a decree entered declaring the deed null and void and cancelling it of record and revoking the letters testamentary heretofore issued to the respondent Lanoma L. Moore.

Hill, P. J., and McNamee, J. concur; Crapser and Heffernan, JJ., concur except as to the removal of the executrix.

Decree reversed on the law and facts, with one bill of costs, as in an action, in this court and in the court below, in favor of the appellant against the respondent individually, and decree entered declaring the deed null and void, cancelling it of record, and revoking the letters testamentary heretofore issued to the respondent Lanoma L. Moore, as executrix, etc., of Arlington P. Fulton, deceased.