11 So.2d 150

**WARRICK et al v. WOODHAM et al.**

4 Div. 247.

Supreme Court of Alabama.

Dec. 3, 1942.

Rehearing Denied Jan. 14, 1943.

Martin & Jackson, of Dothan, for appellants.

588

Tompkins & Ramsey, of Dothan, for appellees.

LAWSON, Justice.

The bill in this cause was filed by the appellants, Virginia Warrick, a minor, through her general guardian, J. L. Mullins, and Mary Sue Warrick, against Mrs. Lillie Mae Woodham, B. L. Warrick, Dolphie Pittman Powell, Margaret Pittman Buckner, Charles Pittman and Brady M. Woodham, as executor of the last will and testament of L. S. Warrick, deceased. The respondent Lillie Mae Woodham died subsequent to the date on which the testimony was taken before the register but prior to the date of submission. Betty Jean Wood-

ham, Sylvia Warrick, Haywood Warrick, Susan Warrick, all minors, and Brady M. Woodham, as an individual and as executor of the last will and testament of Lillie Mae Woodham, deceased, were substituted as parties respondent for and in the place of Lillie Mae Woodham, deceased. J. R. Ramsey was duly appointed as guardian ad litem for the minors and agreed for them to be made parties respondent.

The complainants and all of the respondents, with the exception of Brady M. Woodham, are either children or grandchildren of L. S. Warrick, who died in April, 1938, seized of 185 acres of land located in Houston County, which land is the subject of this suit. Complainant Mary Sue Warrick and respondents B. L. Warrick and Lillie Mae Woodham are the children of L. S. Warrick, and complainant Virginia Warrick and all of the other respondents, with the exception of Brady M. Woodham, are the grandchildren of the said L. S. Warrick. The respondent Brady M. Woodham was the husband of Lillie Mae Woodham and, as stated above, is the executor of Warrick's will.

L. S. Warrick executed his will on the 24th day of December, 1924. That part of the will which is pertinent to this cause is as follows:

"Article Five. It is my will and I hereby direct that my Executor, hereinafter named, shall sell my plantation in Houston County, Alabama, containing one hundred and eighty-five (185) acres, that lies just outside of the North-west corporate limits of the City of Dothan, Alabama, as soon after my death as practical, provided he can obtain for the same the sum of Eighteen Thousand ($18000.00) Dollars; but if he cannot obtain the sum of Eighteen Thousand ($18000.00) Dollars for said plantation then I hereby direct that he hold and lease out said plantation for a period of two years and collect the rents therefrom and said rents shall be paid as follows: After paying taxes on said place to be divided as follows: One-sixth each to my children, Young Warrick, Harry Warrick, Bascomb Warrick, Lillie Mae Woodham and Mary Sue Warrick, and one-eighteenth part thereof to be paid to each of my grandchildren, Charles Pittman, Margaret Pittman and Dolphie Pittman. Should my executor be unable to sell said property for Eighteen Thousand ($18000.00) Dollars or more within two years from the date of my death then he shall sell said plantation

for the best price he can obtain and execute titles as my Executor to the purchaser of said lands; and when said lands are sold the proceeds thereof shall be divided as follows: One-sixth of the same shall be paid to each of my children, Young Warrick, Harry Warrick, Bascomb Warrick, Lillie Mae Woodham and Mary Sue Warrick, and one-eighteenth to be paid to each of my grandchildren, Charles Pittman, Margaret Pittman and Dolphie Pittman and when said money is paid to my children and grandchildren as herein provided, I hereby direct that they shall invest said money in a home, except my minor daughter Mary Sue Warrick and I hereby direct that her money arising from the sale of said lands be loaned to some solvent bank and draw interest until she becomes twenty-one years old."

The original bill, filed December 5, 1940, sought: (1) the removal of the administration of the estate of L. S. Warrick, deceased, from the Probate Court of Houston County to the Circuit Court in Equity of that county; (2) an order by the court decreeing that complainants Mary Sue Warrick and Virginia Warrick, and respondents Lillie Mae Woodham, B. L. Warrick, Dolphie Pittman Powell, Margaret Pittman Buckner and Charles Pittman are the joint owners as tenants in common of the land described in the bill, which is the same land dealt with in Article Five of L. S. Warrick's will, and a further order that said lands be sold for division; (3) and in the alternative, a construction of the will by the court, declaring the respective rights of the complainants and respondents under the will and an order defining the rights, powers, duties and responsibilities of Brady M. Woodham, as executor of the will; (4) that the court supervise and direct the executor as to the sale of the property in the event it should determine that he has the power of sale under the will; (5) that the court order that a reference be held to determine the amount of the fee to be paid attorneys for complainants out of the proceeds of the sale of the lands or out of the estate for legal services rendered. Under amendments to the original bill, the complainants sought to have the court: (1) cancel a deed which it was alleged was fraudulently executed by the executor, Brady M. Woodham, to his wife, Lillie Mae Woodham; (2) and to order that the lands be sold at public outcry to the highest bidder for cash, under the su-

pervision of the court, or to order said lands sold to complainants at a price which it was alleged they would pay therefor.

The trial court immediately ordered the removal of the administration of the estate of L. S. Warrick, deceased, from the Probate Court of Houston County to the Circuit Court in Equity of that county. Section 138, Title 13, Code of Alabama, 1940.

Appellees' demurrer to that aspect of the original bill which had for its purpose the sale of the lands for division among the alleged joint owners was sustained, as was the demurrer to that aspect which sought to have the court supervise and direct the executor in the exercise of the power of sale conferred upon him by the will. The trial court, however, overruled appellees' demurrer to that aspect of the original bill which sought a construction of the will and did likewise as to the demurrer to the amendment to the bill which sought a cancellation of the deed which it was alleged was fraudulently executed by the executor to his wife.

In its final decree the court found that appellants were not entitled to have the deed of B. M. Woodham, as executor of the will of L. S. Warrick, to Lillie Mae Woodham cancelled and set aside. This conclusion resulted in a denial of the alternative prayer that the lands be sold at public auction or to the appellants for the price which they offered to pay therefor. The court found, however, that appellants were entitled to a construction of the will and proceeded to instruct the executor as to the distribution to be made of the purchase price received by him as such executor from the sale of the lands. Appellants were taxed with two-thirds of the costs and B. M. Woodham, as executor, was authorized and directed to pay one-third of the costs out of the proceeds received from the sale of the land before a distribution of the same. It was further decreed that attorneys for appellants were entitled to be paid a reasonable fee out of the funds received from the sale of the lands and the register was directed to hold a reference to determine what would be a reasonable fee to be paid such attorneys for their services rendered.

Appellants assign as error the action of the trial court in: (1) sustaining the demurrer to that aspect of the original bill which sought a sale of the land for division; (2) sustaining the demurrer to that aspect which sought to have the court supervise and direct the executor in the exercise of the power of sale conferred upon him by the will; (3) refusing to cancel the deed of B. M. Woodham, as executor, to Lillie Mae Woodham; (4) failing to order that the lands be sold at public auction or to the appellants for the price which they offered therefor.

Appellees have cross-assigned errors as to the action of the court in: (1) overruling their demurrer to that aspect of the bill which sought a construction of the will; (2) overruling demurrer to that aspect which sought a cancellation of the deed executed by the executor to Lillie Mae Woodham; (3) decreeing that attorneys for appellant were entitled to a reasonable attorney's fee for their services rendered in securing an order of the court with reference to the distribution of the funds in the hands of the executor arising from the sale of the lands to be paid out of such funds; (4) taxing one-third of the costs incurred in the suit against the executor and ordering such costs to be paid out of such funds.

We will consider, first, the assignments of error made by the appellants and argued.

Appellants' assignments of error 1, 2, 4, 9, 10 and 14 all relate to the action of the trial court in sustaining appellees' demurrer to that aspect of the bill which sought a sale of the lands for division. They are treated together in appellants' brief and will be so dealt with here.

The averments of the bill relating to that aspect are substantially as follows: That L. S. Warrick died testate in Houston County, Alabama, seized and possessed of lands therein described. That he left a last will and testament which had been admitted to probate by the Probate Court of Houston County, a copy of which will was made a part of the bill. That at the time of the death of the said L. S. Warrick, he left surviving him three children, namely, Mary Sue Warrick, one of the complainants, and Mrs. Lillie Mae Woodham and B. L. Warrick, two of the respondents. That he also left surviving him four grandchildren, namely, Virginia Warrick, the other complainant, and Dolphie Pittman Powell, Margaret Pittman Buckner and Charles Pittman, three of the respondents. That at the time of the execution of his will, the said L. S. Warrick

had two other living children, namely, Young Warrick and Harry Warrick, but that both of them died prior to the death of the testator. That Young Warrick died without issue and that Harry Warrick died leaving as his sole heir the complainant, Virginia Warrick. That the complainants, Virginia Warrick and Mary Sue Warrick, and the respondents Mrs. Lillie Mae Woodham, B. L. Warrick, Dolphie Pittman Powell, Margaret Pittman Buckner and Charles Pittman are the joint owners as tenants in common of lands hereinabove described, and that Virginia Warrick, Mary Sue Warrick, Mrs. Lillie Mae Woodham and B. L. Warrick each own an undivided one-fifth interest in and to said lands, and that Dolphie Pittman Powell, Margaret Pittman Buckner and Charles Pittman each own an undivided one-fifteenth interest therein. That the lands cannot be equitably divided without a sale thereof and that a sale of said lands was necessary in order to obtain an equitable division of the proceeds thereof among the said joint owners, and that said joint owners were entitled to have said lands sold for division of the proceeds thereof as their interests appear. That letters testamentary had theretofore been granted to respondent, Brady M. Woodham, who had qualified as executor and who was serving as executor at the time of the filing of the bill.

As heretofore stated, the will was made a part of complainants' bill and under the terms of Article Five thereof it clearly appears that it was the will of the testator that the lands here involved be sold by his executor and the proceeds of the sale be distributed in the manner outlined. The direction to do so is clear, explicit and mandatory. The rule is well established that where lands are expressly directed to be sold by the provisions of a will, and the proceeds distributed among persons designated, the land must be considered as having been converted thereby into personalty and no suit for partition of the lands can be maintained. Snow v. City Nat. Bank of Tuscaloosa, 240 Ala. 408, 199 So. 818; Gaddy v. Mullens et al., 215 Ala. 664, 112 So. 133; Greer v. Herren, 146 Ala. 640, 41 So. 783; Bank of Ukiah v. Rice, 143 Cal. 265, 76 P. 1020, 101 Am.St.Rep. 118; John v. Turner, 121 W.Va. 447, 6 S.E.2d 480, 124 A.L.R. 1444; 47 Corpus Juris 318; 40 Amer.Juris. 9. Where a will requires a conversion, by sale, of real estate into personalty, the conversion occurs as of the date of the testator's death, notwithstanding the fact that the actual change in the form of the property may not take place immediately. In the case of Allen v. Watts, Ex'r, 98 Ala. 384, 11 So. 646, 649, it is said:

"Our conclusion from the authorities, and from a consideration of the reasons which support the equitable doctrine of conversion, is that that interest or estate in the land which the will requires absolutely and without contingency shall be sold and converted into money, which is to be paid to certain beneficiaries, is, for the purposes of that provision, to be considered as money from the date of the testator's death. It is as if the testator had taken that interest or estate in the land within his grasp, and transformed it under his own hand into another kind of property. It is none the less a gift of personal property from the beginning because there is a postponement of the time when the legatees can come into the enjoyment of the legacies. A contingency as to the time when the actual change in the form of the property shall take place, does not lessen the effect of the act of the testator in making the land money by directing the appropriation of the proceeds of its sale to the satisfaction of a gift of money. If the testator is the owner in fee of the land, he may carve out any interest or estate he pleases, and direct that alone to be sold, and the proceeds applied on a legacy. As to the remaining interest or estate in the land, to which the testator does not undertake to impart the qualities of money, the land continues land, with all the incidents which attach to such estate at law." First Nat. Bank of Lincoln v. Cash, 220 Ala. 319, 125 So. 28; Goodwyn v. Cassels et al., 207 Ala. 482, 93 So. 405; High v. Worley, 33 Ala. 196.

The appellants earnestly insist, however, that the death of Young Warrick, without issue, prior to the death of the testator, worked a failure of the conversion of the land into money and that the lands here involved descended under the laws of descent and distribution to the complainants and others as joint owners, and that, therefore, they are entitled to have the lands sold for division.

Under the terms of the will, Young Warrick and Harry Warrick were entitled to receive one-sixth of the proceeds of the

sale of the land. The bill alleges that Young Warrick died without issue, prior to the death of the testator, and that Harry Warrick also predeceased the testator, leaving as his sole heir the complainant Virginia Warrick. The death of Harry Warrick prior to the death of the testator did not work a lapse as to his interest, as it passed to his daughter Virginia under the terms of Section 16, Title 61, Code of Alabama 1940. The will did not contain a residuary clause, therefore there was a lapse of the bequest to Young Warrick, who died without descendant, which must be administered and distributed as in the case of intestacy. Section 8, Title 61, Code of Alabama 1940.

■ The lapse of the bequest to Young Warrick, however, did not in our opinion work a failure of the conversion of the land into money, nor in any way affect the authority or duty of the executor to sell the land. The sale of the land by the executor is essential to the purposes of the will, notwithstanding the fact that one of the persons entitled under the will to take a portion of the proceeds of the sale of the land as a bequest died without issue during the lifetime of the testator, and that for that reason such bequest lapsed. The necessity for the conversion of the land remains. Lash v. Lash, 209 Ill. 595, 70 N. E. 1049; Bender v. Paulus et al., 197 N. Y. 369, 90 N.E. 994; Meekins v. Branning Mfg. Co., D.C., 224 F. 202; 18 C.J.S., Conversion, p. 67, § 29.

■ This principle is stated in Tiffany's Work on the Law of Real Property, Vol. 1, Section 303, page 519, as follows: "Although there is a partial failure of the purposes for which a conversion was directed by will, a conversion is still ordinarily necessary, for the purposes which have not failed, to the same extent as if there had been no partial failure of purpose. For instance, in a leading case on the subject, there was a testamentary gift to trustees, with directions to sell the land and, after paying debts and legacies, to divide the balance of the proceeds among fifteen persons. The gifts of two of these persons lapsed by reason of their death before testator, but it was still necessary to sell the land in order to ascertain just what amount of money was to go to each of the thirteen surviving legatees."

The case to which reference is made in the above quotation is that of Ackroyd v. Smithson, 1 Brown's Chancery Reports 503, 1 White & Tudor Leading Cases in Equity 1171.

Mr. Pomeroy says: "Where the purpose for converting land into money directed by a will wholly fails, it has been shown that the land results to the heir. Where the purpose only partially fails, the conversion must still be made by selling the land, in order to satisfy the purposes which remain effective." Pomeroy's Equity Jurisprudence, Vol. 3, § 1171, p. 2272.

We have given careful consideration to the authorities cited in brief of the appellants, but are of the opinion that they do not support appellants' contention. The case of Ackroyd v. Smithson, supra, which is cited by appellants, is referred to in the quotation from Tiffany's Work on the Law of Real Property, supra, as supporting the conclusion here reached. A careful consideration of that case discloses that there was no question of the fact that there was a conversion of the property, even though two of the legatees predeceased the testator. The question in the case was as to what disposition should be made of that part of the proceeds received from the sale of the property over and above that amount necessary to pay the bequests to the living legatees. It was held that although it was necessary to sell the real estate to carry out the purposes of the will, the surplus should descend as realty rather than as personalty, even though in the form of money. The case of Painter v. Painter, 220 Pa. 82, 69 A. 323, 20 L.R.A.,N.S., 117, is not controlling of the question here presented. In that case there was a total failure of purpose, whereas in the instant case there is only a partial failure. The authorities which we have heretofore cited clearly point out the distinction between cases where there is a total failure of purpose and cases where the purpose only partially fails. Neither does the case of First Nat. Bank of Lincoln v. Cash, supra, in any way support appellants' contention.

■ We are of the opinion that there was a conversion of the lands into money at the date of the death of the testator and that, therefore, the complainants, under the allegations of the bill, cannot maintain a suit for a sale of the lands for division. It follows, therefore, that the trial court correctly sustained respondents' demurrer to that aspect of the bill which sought to have the land sold for division.

Appellants next contend that the court erred in its final decree in concluding that no fraud was perpetrated in the sale of the land by B. M. Woodham, as executor, to his wife, Lillie Mae Woodham, and in holding that such land was sold for its reasonable market value and in refusing to set the sale aside.

As to this aspect, the facts alleged in the bill as amended, so far as deemed important, may be summarized as follows: That the executor, B. M. Woodham, and his wife, Lillie Mae Woodham, were advised on, to wit, November 18, 1940, by counsel for Virginia Warrick, one of the complainants, that Virginia and her aunt and custodian, Mrs. S. Peacock, had heard of the proposed sale of the lands to Mrs. Woodham by her husband, as executor, for the sum of $35 per acre, and that they were dissatisfied with such proposed sale and that counsel had been employed to prevent such sale and to secure the removal of the said B. M. Woodham as guardian of Virginia Warrick, to which place he had been appointed without the knowledge, consent or nomination of Virginia Warrick, although she was over the age of fourteen years at the time of his appointment. It is alleged that counsel for complainant Virginia Warrick also advised the executor and his wife that Virginia and her aunt, Mrs. S. Peacock, desired that the lands be divided rather than sold by the executor to his wife for the sum of $35 per acre. That notwithstanding this knowledge on the part of B. M. Woodham and his wife, Lillie Mae Woodham, a deed was executed on the following day, to wit, the 19th day of November, 1940, conveying the lands here involved to his wife. That the purpose of the conveyance was to defeat the rights of complainant to a portion of the land for the purpose of preventing complainant Virginia Warrick from proceeding to have the land itself divided among the persons named in the testator's will, thereby defrauding complainant. That no consideration was paid for the execution of the deed and that it was never delivered. That although Article Five of the will of the testator directed the executor, B. M. Woodham, to try to sell the lands within two years after the testator's death for $18,000, and to sell it for such sum as he could secure therefor after two years from the date of the testator's death, that the executor had failed and neglected to comply with this direction and had made no effort to dispose of the lands other than by the sale to his wife.

The testimony was taken before the register and not ore tenus before the court, therefore the findings of fact are not supported by the presumption of verity that obtains where testimony is taken and given in open court before the judge rendering the final decree. The evidence must be here weighed and considered de novo. Williams v. Ellington, 233 Ala. 638, 172 So. 903; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624.

We have carefully examined and considered the evidence, and although there is sharp conflict as to some of its phases, we think the following facts are established: That after the death of L. S. Warrick, the executor of his estate, B. M. Woodham, entered upon the performance of his duties as such and diligently endeavored to sell the lands for the price fixed by the testator, which price was greatly in excess of the value of the lands. That he was unable to make such a sale and in accordance with the terms of the will, the executor leased the lands and distributed the rents to the persons entitled thereto. That the portion of the rent to which Virginia Warrick, the minor daughter of Harry Warrick, deceased, was entitled, there being no general guardian, was paid by the executor to the Probate Judge under Sections 8251–8254, Code of Alabama, 1923 (Sections 99–102, Title 21, Code of 1940), who in turn paid the money to the maternal grandfather, who was at the time the custodian of Virginia Warrick. That complaint was made to the executor that Virginia was not receiving the benefits of such money, so at the suggestion of his wife and his brother-in-law, Bascomb Warrick, aunt and uncle of Virginia, he was appointed her general guardian. That such appointment was not made at Virginia's suggestion or nomination, although she was over fourteen years of age at the time. It does not appear, however, that Woodham knew her age at the time he was appointed. That shortly after Woodham was appointed as Virginia's guardian, he, Mrs. Woodham and Bascomb Warrick went to see Virginia, who at that time was living in Georgia with her maternal aunt, Mrs. S. Peacock, for the purpose of bringing her back to live with the Woodhams in Dothan. That during that visit Mrs. Peacock was told that Virginia could not receive any of the money coming from the sale of the lands until she was

twenty-one years of age, except as given to her by her guardian. That Mrs. Peacock then consulted counsel relative to having Mr. Woodham removed as Virginia's guardian. That a few weeks before the filing of this suit, the Probate Court of Houston County at the request of Virginia appointed as her general guardian Mr. J. L. Mullins. That Woodham thereupon filed his petition for final settlement, which was allowed in all respects. His accounts seem to have been in order and all funds properly accounted for. He received no compensation for his services.

That the executor, after the expiration of two years from the date of the death of the testator, tried to sell the lands for the best price obtainable and the best offer which he received was $5,500 or approximately $30 an acre. That Mrs. Powell and Mrs. Buckner were anxious to dispose of their interest in the property and offered to convey it to Mrs. Woodham for the sum of $30 an acre, which offer was agreeable to Mrs. Woodham. That this fact was made known to Mrs. Peacock, the aunt and custodian of Virginia, who consulted counsel for the purpose of having the land divided among the beneficiaries named in the will rather than having it sold and the proceeds thereof distributed. That Mrs. Woodham, Bascomb Warrick, Mrs. Powell and Mrs. Buckner, who also seemed to be representing their brother, Charles Pittman, were informed of the possible court action by Virginia on either the 16th or 18th of November, 1940. That they believed that such action would not only entail considerable court costs and attorneys' fees, but would ultimately result in the land being sold for less than its value. That with the hope that an immediate sale would circumvent any court action by Virginia, Bascomb Warrick, Mrs. Powell and Mrs. Buckner requested Mrs. Woodham to purchase the property for $35 an acre, or a total purchase price of $6,475. That Mrs. Woodham offered to buy the lands at that figure on the night of November 18, 1940, after she and her husband, the executor of her father's estate, had been advised by counsel that such sale could be made provided the purchase price represented the fair and reasonable market value of the lands. That on November 19, 1940, the executor signed and acknowledged a deed wherein the lands were to be conveyed to his wife upon the payment by her of the sum of $6,475. That Mrs. Woodham also agreed at that time to pay the taxes on the property for the tax year 1940–41. That the purchase price was not paid at that time nor was the deed delivered, it being retained by counsel for the executor. That the transaction was not completed at that time for the reason that counsel for complainants notified the executor that his clients, Virginia and Mary Sue Warrick, were opposed to such sale and that they wanted their share of the land itself rather than a portion of the proceeds received from a sale thereof. That Mary Sue Warrick was called to Dothan on the day that the executor signed and acknowledged the deed and that she at that time stated she was not willing for the land to be sold to Mrs. Woodham for $35 an acre, but declined to pay that price for it when it was offered to her by the executor. That within a few days after she arrived in Dothan, she consulted with counsel who were representing Virginia Warrick and decided to join with her in the filing of this suit, which was instituted on December 5, 1940. That in an amendment to their bill which was filed on June 6, 1941, complainants alleged that they would purchase the property jointly for the sum of $6,875, which is $400 more than the consideration named in the deed from the executor to his wife, but the evidence does not disclose that such an offer was ever made to the executor in person. That on August 14, 1941, the day preceding the date on which the testimony was taken before the register, the deed which was signed and acknowledged by the executor on November 19, 1940, was delivered to Mrs. Woodham, who thereupon paid the consideration recited in the deed, with interest thereon from November 19, 1940, to August 14, 1941, at the rate of 8%, or a total consideration of $6,862.06. That the purchase price was paid to the executor, who did not distribute it to the persons named in the will, but deposited it in a Dothan bank to his credit as executor. That Mrs. Woodham had been advised by counsel at the time the deed was signed and acknowledged that she would have to pay interest on the purchase price if the transaction was not completed within a reasonable length of time. That the price paid for the land by Mrs. Woodham was its fair and reasonable market value, it being in excess of the value placed thereon by such disinterested witnesses as the County Farm Agent for Houston County, the Houston County Farm Supervisor for the Farm Security Administration, who not only inspected the land but also made a soil analy-

sis thereof, a farmer whose land adjoined the Warrick lands, and the tenant who had been living on and working the lands for the last five years preceding the trial and who was a witness for complainants.

It is the contention of the appellants that the case of Grist v. Carswell, 231 Ala. 442, 165 So. 102, 104, is here controlling. In that case it was said: "The facts found by the probate court in respect to the sale of the West Adams street property and its purchase by the executor, through Singletary and Mrs. Grist, rendered the sale voidable at the option of the cestui que trust— the legatees under the will—and armed them with the right to go into a court of equity and have the sale set aside and the deed annulled."

We do not think that the conclusion there reached is decisive here for the reason that in that case the executor himself indirectly purchased the property, while in this case the property was purchased by the executor's wife and there is nothing in the evidence to indicate any kind of an agreement whereby Mrs. Woodham was to reconvey to her husband.

 It has been long and well settled by the decisions of this court that a purchase by a trustee for his own benefit at a sale of the trust property is voidable at the option of the cestui que trust, and will be set aside on timely application made for that purpose; and this rule is applicable whether the purchase be made directly or indirectly, in person or through an intermediary, who subsequently reconveys to the trustee. It has also been held that the rule is applicable to such a purchase by a trustee irrespective of the fairness of the purchase. Charles v. Dubose, 29 Ala. 367; Calloway v. Gilmer, 36 Ala. 354; Cottingham v. Moore, et al., 128 Ala. 209, 213, 30 So. 784; Bank of Wetumpka v. Walkley, 169 Ala. 648, 53 So. 830; Randolph et al. v. Vails, et al., 180 Ala. 82, 60 So. 159. This court, however, has recognized and sanctioned as an exception to this rule, a purchase made by an executor or administrator of estate property, provided such executor or administrator has an interest in the property and it is sold fairly and under such circumstances as will afford the best price. Bank of Wetumpka v. Walkley, supra; Randolph et al. v. Vails, et al., supra.

It is contended by appellants that a sale by an executor to his wife of trust property is as much against public policy as where the executor himself is the purchaser, and such a sale is voidable at the instance of a cestui que trust. It is so held in some states. In the case of In re Fulton's Will, 253 App.Div. 494, 2 N.Y.S.2d 917, 919, the executrix was directed to sell the real estate of the testator, her father, as soon after his death as she could reasonably and prudently do so and to divide the proceeds equally among his children, herself, a sister and a brother. The executrix conveyed the property to her husband for a price which she contended was the fair and reasonable market value of the property. The brother of the executrix brought suit to have the conveyance declared null and void. The court held:

"In our view of the case, we need not go into the question of the price obtained or the nature and extent of the premises sold. A brief discussion of the law relating to the right of the trustee to convey trust property to her husband is all that is required.

"A trustee's first duty is to his trust. It is elemental that he cannot transfer trust property to himself individually. We see little, if any, difference in a trustee conveying trust property to her husband. Such a sale at once raises a doubt as to its validity and is presumed to be a violation of the trust. While it may not actually have been a fraudulent transaction, only the fullest and fairest disclosure of all the facts will establish that. A conflict of interests exists. The mere showing of the relationship raises the presumption and gives the beneficiary of the trust the right to have the transfer set aside. The courts have said that this was to avoid the opportunity for actual fraud and its easy concealment by a trustee and that such sales should be avoided as a matter of public policy. In principle, such a transfer is constructively fraudulent and may be canceled at the beneficiary's option." American Law Institute Restatement of the Law of Trusts, Vol. 1, Section 170, subsection 1(e).

 We have been unable to find where this question has been passed on by this court and do not deem it necessary to do so in this case for the reason that we think that the rule which permits an executor to purchase estate property in which he has an interest, provided the sale is fairly made and the price paid is adequate, will likewise permit an executor to sell estate property under the same conditions to his wife,

who is one of the beneficiaries under the will.

■ As before stated, we do not think the conveyance is subject to cancellation for the mere fact that it was made by the executor to his wife, who was one of the legatees under the will, nor because of the price paid for the lands. In our opinion, the lower court's conclusion that the consideration paid by Mrs. Woodham to the executor was the fair and reasonable market value of the land is fully sustained by the evidence. Appellants contend, however, that the events immediately preceding the signing of the deed show the act of the executor to have been fraudulent. It is true that the conveyance was signed and acknowledged under unusual circumstances, however, the evidence does not indicate that the reason for the haste with which the conveyance was made was the desire of the executor to benefit his wife or any of the legatees, or to in any way deprive complainants of their rights under the will. On the contrary, we think the evidence supports the view that it was the executor's purpose to prevent litigation and thereby conserve as much of the estate as possible for the benefit of all the legatees. It is to be noted that the executor tried to sell the property to the complainants for the same price for which it was sold to Mrs. Woodham. We think the sale was fairly made and an adequate price paid for the land and do not believe that the deed should be cancelled.

It is unnecessary to consider appellants' assignments of error relating to the court's refusal to order the lands sold at public auction or to the complainants for the price offered by them, in view of our conclusion that the executor did not breach his trust in making the conveyance to his wife.

Appellees' cross-assignments of error 1, 2, 5 and 6 are to the point that the court erred in overruling appellees' demurrer to that aspect of the bill which sought a construction of the will and in decreeing that attorneys for complainants were entitled to attorneys' fees to be paid for their services out of the funds arising from the sale of the lands.

■ The demurrer was correctly overruled. The rule is well settled that courts of equity have inherent power under their general jurisdiction over trusts to construe wills to the extent to which trusts are thereby created either expressly or by necessary implication. Trotter v. Blocker, 6 Port. 269; Sellers v. Sellers, 35 Ala. 235; Cowles v. Pollard, 51 Ala. 445; Hinson v. Naugher, 207 Ala. 592, 93 So. 560; Boshell v. Boshell, 218 Ala. 320, 118 So. 553; Norris et al. v. Johnson et al., 151 Ark 189, 235 S.W. 804; 69 Corpus Juris 856. It is also settled that when the administration of an estate is once removed from the probate court into a court of equity, the jurisdiction with which the equity court becomes thus vested comprehends the judicial power to make all orders or decrees necessary to the administration of the estate including the construction of the will. Hinson v. Naugher, 207 Ala. 592, 595, 93 So. 560; Carroll v. Richardson, 87 Ala. 605, 6 So. 342.

■ There was no residuary clause in the will and the death of Young Warrick prior to that of the testator created a situation which we think called for a determination by the court not only as to the executor's power to sell, but also as to the disposition of the proceeds of the sale. This action of the court was beneficial to all the parties interested in the funds received from the sale of the lands. The court, however, did not err in holding that the attorneys for complainants are entitled to a reasonable fee to be paid out of the funds received from the sale of the lands as compensation for their services solely in securing an order of the court with reference to the distribution of such funds. A reference was ordered to be held by the register to determine the amount of the fee to which attorneys for complainants are entitled, but the record does not show that such reference was held prior to the appeal to this court, so we are not here concerned with the amount of such fee.

The basis of cross-assignment of error number 7 is that the court erred in its final decree in taxing B. M. Woodham, as executor of the will of L. S. Warrick, deceased, with one-third of the costs incurred in the suit and in authorizing and directing him to pay one-third of such costs out of the funds in his hands arising from the sale of the lands before distribution of such funds.

■ There was no reversible error in the manner in which the costs were taxed. Such matters are held in equity to rest largely in the discretion of the trial judge. Delony v. O'Reilly, 235 Ala. 386, 179 So. 207.

Our conclusion is in all respects in harmony with rulings of the trial court, and the decree rendered will accordingly be here affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.